1  VENABLE LLP
   Steven E. Swaney (221437)
2  seswaney@venable.com
   101 California Street, Suite 3800
3  San Francisco, CA 94111
   Telephone:    415.653.3750
4  Facsimile:    415.653.3755

5

6  Attorneys for Defendant
   SNAP RTO LLC

7

8               UNITED STATES DISTRICT COURT

9           FOR THE NORTHERN DISTRICT OF CALIFORNIA

10
   APRIL SPRUELL, individually and on behalf of    Case No.
11 all others similarly situated,

12              Plaintiff,                          **DECLARATION OF STEVEN E.
                                                    SWANEY IN SUPPORT OF
13      v.                                          DEFENDANT SNAP RTO, LLC'S
                                                    NOTICE OF REMOVAL OF ACTION
14 SNAP RTO, LLC, a Utah limited liability          TO FEDERAL COURT**
   company,
15                                                  **CLASS ACTION**
                Defendant.
16
                                                    Action Filed: November 12, 2020
17                                                  Removal: September 13, 2021

18

19

20

21

22

23

24

25

26

27

28

VENABLE LLP
101 CALIFORNIA STREET, SUITE 3800
SAN FRANCISCO, CA 94111
415-653-3750

I, Steven E. Swaney, declare as follows:

1.      I am an attorney at law duly admitted to practice in the State of California before this Court. I am Counsel at Venable LLP, and counsel of record for Defendant Snap RTO LLC in the above-entitled action. I have personal knowledge of the matters set forth in this declaration and if called as a witness, I could and would testify competently to them under oath. I make this Declaration in support of Snap RTO, LLC's Notice of Removal of the Action to the United States District Court for the Northern District of California.

2.      Attached as Exhibit 1 is a copy of the summons and complaint against Snap RTO, LLC captioned *April Spruell v. Snap RTO, LLC*, Civ. Action No. RG20080681, in the Superior Court of the State of California for the County of Alameda (the "Action"). Snap was served with the summons and complaint on or about December 3, 2020.

3.      Attached as Exhibit 2 is a copy of the First Amended Complaint in the Action, which Plaintiff filed on September 9, 2021. Snap was served with the First Amended Complaint on September 9, 2021.

4.      Attached as Exhibit 3 are all the orders issued in the Action to date. Together with Exhibits 1 and 2, these constitute all process, pleadings, and orders in the Action.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 13th day of September, 2021, in San Francisco, California.

By: _____
          Steven E. Swaney

**VENABLE LLP**
101 CALIFORNIA STREET, SUITE 3800
SAN FRANCISCO, CA 94111
415-653-3750

# EXHIBIT 1


DOSTART
HANNINK &
COVENEY
LLP

4180 LA JOLLA VILLAGE DRIVE, SUITE 530
LA JOLLA, CALIFORNIA 92037-1474
TELEPHONE: 858-623-4200
FAX: 858-623-4299

ZACH P. DOSTART
DIRECT DIAL 858-623-4275
E-MAIL: ZDOSTART@SDLAW.COM

December 3, 2020

**CONFIDENTIAL SETTLEMENT COMMUNICATION**
**Cal. Evid. Code § 1152; Fed. R. Evid. 408**

Delivered to:
Matthew Hawkins, Registered Agent
1193 West 2400 South
Salt Lake City, UT 84119

For the Attention of:
Snap RTO LLC

Re:   *Spruell v. Snap RTO LLC*

Dear Mr. Hawkins:

Enclosed is a service copy of the class action complaint my firm filed in the Alameda County Superior Court, entitled *Spruell v. Snap RTO LLC.*

I am writing to inquire whether Snap RTO LLC has an interest in discussing the potential for an early resolution of the matter. As I'm sure you know, as litigation progresses and as more time and resources get expended, as a practical matter it can become more difficult for the parties to reach a resolution. On the other hand, at an early stage, there can be a better chance of reaching a reasonable compromise that is acceptable to all parties. If you have any interest in discussing early resolution, please let me know. Thank you.

Sincerely,
DOSTART HANNINK & COVENEY LLP

*Zachariah Paul Dostart*

**Zach P. Dostart**

Enclosure:  Class Action Complaint
933510.1



COPY

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
SNAP RTO LLC, a Utah limited liability company; and DOES 1-50, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
APRIL SPRUELL, individually and on behalf of all others similarly situated

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

ENDORSED
FILED
ALAMEDA COUNTY
NOV 1 2 2020
CLERK OF THE SUPERIOR COURT
By ANIA PIERCE

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (*www.sucorte.ca.gov*), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (*www.lawhelpcalifornia.org*), en el Centro de Ayuda de las Cortes de California, (*www.sucorte.ca.gov*) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| The name and address of the court is: *(El nombre y dirección de la corte es):* | CASE NUMBER: *(Número del Caso):* |
|---|---|
| Alameda County Superior Court<br>1225 Fallon Street<br>Oakland, CA 94612 | RG20085681 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):* Zach P. Dostart; James T. Hannink; DOSTART HANNINK & COVENEY LLP; 4180 La Jolla Village Dr., Ste. 530, La Jolla, CA 92037; (858) 623-4200

| DATE:<br>*(Fecha)* NOV 1 2 2020 | Chad Finke Clerk, by | ANIA PIERCE , Deputy |
|---|---|---|
| | *(Secretario)* | *(Adjunto)* |

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010).)*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒☒ on behalf of *(specify):* SNAP RTO LLC, A UTAH LIMITED LIABILITY COMPANY

under: ☐ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
      ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
      ☐ CCP 416.40 (association or partnership)     ☐ CCP 416.90 (authorized person)
      ☒☒ other *(specify):* LIMITED LIABILITY COMPANY
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

For your protection and privacy, please press the Clear
This Form button after you have printed the form.

COPY

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| James T. Hannink (131747)<br>Zach P. Dostart (255071)<br>DOSTART HANNINK & COVENEY LLP<br>4180 La Jolla Village Drive, Suite 530, La Jolla, CA 92037 | |

FILE BY FAX

TELEPHONE NO.: (858) 623-4200   FAX NO. (Optional): (858) 623-4299
ATTORNEY FOR (Name): Plaintiff April Spruell

**ENDORSED FILED ALAMEDA COUNTY**

NOV 12 2020

CLERK OF THE SUPERIOR COURT
By TANIA PIERCE
Deputy

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** ALAMEDA
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS:
CITY AND ZIP CODE: Oakland 94612
BRANCH NAME: Rene C. Davidson Courthouse

CASE NAME:
Spruell v. Snap RTO LLC

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [X] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | RG2008068 |
| | | | JUDGE: | |
| | | | DEPT: | |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | **(Cal. Rules of Court, rules 3.400–3.403)** |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort** | [ ] Other collections (09) | [ ] Construction defect (10) |
| [ ] Asbestos (04) | [ ] Insurance coverage (18) | [ ] Mass tort (40) |
| [ ] Product liability (24) | [ ] Other contract (37) | [ ] Securities litigation (28) |
| [ ] Medical malpractice (45) | **Real Property** | [ ] Environmental/Toxic tort (30) |
| [ ] Other PI/PD/WD (23) | [ ] Eminent domain/Inverse condemnation (14) | [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | **Enforcement of Judgment** |
| [X] Business tort/unfair business practice (07) | [ ] Other real property (26) | [ ] Enforcement of judgment (20) |
| [ ] Civil rights (08) | **Unlawful Detainer** | **Miscellaneous Civil Complaint** |
| [ ] Defamation (13) | [ ] Commercial (31) | [ ] RICO (27) |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] Other complaint (not specified above) (42) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | **Miscellaneous Civil Petition** |
| [ ] Professional negligence (25) | **Judicial Review** | [ ] Partnership and corporate governance (21) |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Other petition (not specified above) (43) |
| **Employment** | [ ] Petition re: arbitration award (11) | |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

NOV 12 REC'D

2. This case [X] is   [ ] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties   d. [X] Large number of witnesses
   b. [X] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. [X] Substantial amount of documentary evidence   f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought (check all that apply): a. [X] monetary   b. [X] nonmonetary; declaratory or injunctive relief   c. [ ] punitive
4. Number of causes of action (specify): 1) Violation of the Karnette Act; 2) Violation of CLRA; and 3) Unfair Competition
5. This case [X] is   [ ] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: November 12, 2020

Zach P. Dostart
(TYPE OR PRINT NAME)

(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courts.ca.gov |
|---|---|---|

F. ADDENDUM TO CIVIL CASE COVER SHEET

*Unified Rules of the Superior Court of California, County of Alameda*

Short Title: **Spruell v. Snap RTO LLC**                    Case Number:

## CIVIL CASE COVER SHEET ADDENDUM

**THIS FORM IS REQUIRED IN ALL NEW UNLIMITED CIVIL CASE FILINGS IN THE**
**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA**

[X] Oakland, Rene C. Davidson Alameda County Courthouse (446)     [ ] Hayward Hall of Justice (447)
                                                                   [ ] Pleasanton, Gale-Schenone Hall of Justice (448)

| Civil Case Cover Sheet Category | Civil Case Cover Sheet Case Type | Alameda County Case Type (check only one) | | |
|---|---|---|---|---|
| Auto Tort | Auto tort (22) | [ ] | 34 | Auto tort (G) |
| | | | | Is this an uninsured motorist case? [ ] yes [ ] no |
| Other PI /PD / WD Tort | Asbestos (04) | [ ] | 75 | Asbestos (D) |
| | Product liability (24) | [ ] | 89 | Product liability (not asbestos or toxic tort/environmental) (G) |
| | Medical malpractice (45) | [ ] | 97 | Medical malpractice (G) |
| | Other PI/PD/WD tort (23) | [ ] | 33 | Other PI/PD/WD tort (G) |
| Non - PI /PD / WD Tort | Bus tort / unfair bus. practice (07) | [X] | 79 | Bus tort / unfair bus. practice (G) |
| | Civil rights (08) | [ ] | 80 | Civil rights (G) |
| | Defamation (13) | [ ] | 84 | Defamation (G) |
| | Fraud (16) | [ ] | 24 | Fraud (G) |
| | Intellectual property (19) | [ ] | 87 | Intellectual property (G) |
| | Professional negligence (25) | [ ] | 59 | Professional negligence - non-medical (G) |
| | Other non-PI/PD/WD tort (35) | [ ] | 03 | Other non-PI/PD/WD tort (G) |
| Employment | Wrongful termination (36) | [ ] | 38 | Wrongful termination (G) |
| | Other employment (15) | [ ] | 85 | Other employment (G) |
| | | [ ] | 53 | Labor comm award confirmation |
| | | [ ] | 54 | Notice of appeal - L.C.A. |
| Contract | Breach contract / Wmty (06) | [ ] | 04 | Breach contract / Wmty (G) |
| | Collections (09) | [ ] | 81 | Collections (G) |
| | Insurance coverage (18) | [ ] | 86 | Ins. coverage - non-complex (G) |
| | Other contract (37) | [ ] | 98 | Other contract (G) |
| Real Property | Eminent domain / Inv Cdm (14) | [ ] | 18 | Eminent domain / Inv Cdm (G) |
| | Wrongful eviction (33) | [ ] | 17 | Wrongful eviction (G) |
| | Other real property (26) | [ ] | 36 | Other real property (G) |
| Unlawful Detainer | Commercial (31) | [ ] | 94 | Unlawful Detainer - commercial   Is the deft. in possession |
| | Residential (32) | [ ] | 47 | Unlawful Detainer - residential   of the property? |
| | Drugs (38) | [ ] | 21 | Unlawful detainer - drugs    [ ] Yes   [ ] No |
| Judicial Review | Asset forfeiture (05) | [ ] | 41 | Asset forfeiture |
| | Petition re: arbitration award (11) | [ ] | 62 | Pet. re: arbitration award |
| | Writ of Mandate (02) | [ ] | 49 | Writ of mandate |
| | | | | Is this a CEQA action (Publ.Res.Code section 21000 et seq) [ ] Yes [ ] No |
| | Other judicial review (39) | [ ] | 64 | Other judicial review |
| Provisionally Complex | Antitrust / Trade regulation (03) | [ ] | 77 | Antitrust / Trade regulation |
| | Construction defect (10) | [ ] | 82 | Construction defect |
| | Claims involving mass tort (40) | [ ] | 78 | Claims involving mass tort |
| | Securities litigation (28) | [ ] | 91 | Securities litigation |
| | Toxic tort / Environmental (30) | [ ] | 93 | Toxic tort / Environmental |
| | Ins covrg from cmplx case type (41) | [ ] | 95 | Ins covrg from complex case type |
| Enforcement of Judgment | Enforcement of judgment (20) | [ ] | 19 | Enforcement of judgment |
| | | [ ] | 08 | Confession of judgment |
| Misc Complaint | RICO (27) | [ ] | 90 | RICO (G) |
| | Partnership / Corp. governance (21) | [ ] | 88 | Partnership / Corp. governance (G) |
| | Other complaint (42) | [ ] | 68 | All other complaints (G) |
| Misc. Civil Petition | Other petition (43) | [ ] | 06 | Change of name |
| | | [ ] | 69 | Other petition |

COPY

FILE BY FAX

1  JAMES T. HANNINK (131747)
   jhannink@sdlaw.com
2  ZACH P. DOSTART (255071)
   zdostart@sdlaw.com
3  DOSTART HANNINK & COVENEY LLP
   4180 La Jolla Village Drive, Suite 530
4  La Jolla, California 92037-1474
   Tel:  858-623-4200
5  Fax: 858-623-4299

6  Attorneys for Plaintiff

7

ENDORSED
FILED
ALAMEDA COUNTY

NOV 1 2 2020

CLERK OF THE SUPERIOR COURT
By _____
    TANIA PIERCE Deputy

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                        COUNTY OF ALAMEDA

10

11  APRIL SPRUELL,
    individually and on behalf of all others
12  similarly situated,

13                Plaintiff,

14  vs.

15

16  SNAP RTO LLC,
    a Utah limited liability company;
17  and DOES 1-50, inclusive,

18                Defendants.

CASE NO. RG20008668

DECLARATION OF ZACHARIAH P.
DOSTART PURSUANT TO CALIFORNIA
CIVIL CODE SECTION 1780(d)

19

20

21

22

23

24

25

26

27

28

DECLARATION OF ZACHARIAH P. DOSTART

1       I, Zachariah P. Dostart, declare as follows:

2       1.    My review of defendant Snap RTO LLC's ("Snap") website

3 (www.snapfinance.com) reflects that Snap does business through retail locations in Alameda

4 County, including but not limited to New Homeworld Outlet in San Leandro, CA.

5       2.    New Homeworld Outlet is the retail location where plaintiff April Spruell entered

6 into a rental-purchase agreement with Snap, as reflected in the rental-purchase agreement dated

7 September 18, 2020.

8       I declare under penalty of perjury under the laws of the State of California that the foregoing

9 is true and correct. Executed on November 12, 2020, at San Diego, California.

10

11

12                        ZACHARIAH P. DOSTART

933493.1

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF ZACHARIAH P. DOSTART



FILE BY FAX

1   JAMES T. HANNINK (131747)
    jhannink@sdlaw.com
2   ZACH P. DOSTART (255071)
    zdostart@sdlaw.com
3   DOSTART HANNINK & COVENEY LLP
    4180 La Jolla Village Drive, Suite 530
4   La Jolla, California 92037-1474
    Tel: 858-623-4200
5   Fax: 858-623-4299

6   Attorneys for Plaintiff

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                         COUNTY OF ALAMEDA

10

11  APRIL SPRUELL,                          CASE NO. RG20080681
    individually and on behalf of all others
12  similarly situated,                     CLASS ACTION

13          Plaintiff,                      COMPLAINT FOR:

14      vs.                                 1)  VIOLATION OF THE KARNETTE
                                                RENTAL-PURCHASE ACT
15  SNAP RTO LLC,                               [Cal. Civ. Code, § 1812.620 et seq.]
    a Utah limited liability company;
16  and DOES 1-50, inclusive,              2)  VIOLATION OF CALIFORNIA
                                                CONSUMERS LEGAL REMEDIES ACT
17          Defendants.                         [Cal. Civ. Code, § 1750 et seq.]

18                                          3)  UNFAIR COMPETITION
                                                [Cal. Bus. & Prof. Code, § 17200 et seq.]
19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

**INTRODUCTION**

1.       This class action complaint seeks to remedy the violation of California consumer protection statutes by defendant Snap RTO LLC ("Snap").

2.       Snap offers extended payment terms for consumer goods pursuant to rental-purchase agreements. In particular, for consumers who desire to obtain merchandise but may not be able to pay the retail price up front, Snap offers to enter into a rental-purchase agreement pursuant to which the consumer can make payments over a period of time. In coordination with retail merchants with whom Snap has established business relationships, Snap offers such rental-purchase arrangements at retail businesses that sell, among other things, automotive goods and services, household furniture, appliances, and electronics.

3.       To guard against potential abuses inherent in consumer rental-purchase agreements, California has enacted a comprehensive statutory framework that regulates all rental-purchase transactions, codified in the Karnette Rental-Purchase Act, Cal. Civ. Code, § 1812.620 et seq. (the "Karnette Act"). (Unless otherwise indicated, statutory citations in this Complaint are to the Civil Code.) Therefore, for transactions that take place within California, Snap is required to comply with the Karnette Act. As described below, with respect to rental-purchase agreements entered into in the State of California, Snap violates the Karnette Act by charging processing fees.

**PARTIES**

4.       Plaintiff April Spruell ("Plaintiff") is an individual residing in Oakland, California.

5.       Plaintiff is informed and believes and thereon alleges that Snap RTO LLC is a Utah limited liability company that does business in the State of California, including in Alameda County.

6.       Plaintiff does not know the names of the defendants sued as DOES 1 through 50 but will amend this Complaint when that information becomes known. Plaintiff alleges on information and belief that each of the DOE defendants is affiliated with the named defendant in some respect and is in some manner responsible for the wrongdoing alleged herein, either as a direct participant, or as the principal, agent, successor, alter ego, or co-conspirator of another defendant. For ease of reference, Plaintiff will refer to the named defendant and the DOE defendants collectively as "Defendants."

1

CLASS ACTION COMPLAINT

7.     Venue is proper in this Court because Plaintiff resides in Alameda County and the rental-purchase agreement between Snap and Plaintiff was entered into in Alameda County.

## BACKGROUND REGARDING RENTAL-PURCHASE TRANSACTIONS
## AND THE KARNETTE ACT

8.     In a traditional retail sale, title to personal property is conveyed from the merchant to the consumer when payment is made at the point of sale.  As an alternative to a traditional retail sale, California law allows merchants to rent or lease personal property to consumers.

9.     In a "rental-purchase agreement," the merchant (referred to as the "lessor," § 1812.622(c)) retains ownership of the personal property while the consumer takes possession and agrees to make periodic lease payments over time, usually on a weekly, bi-weekly, or monthly schedule.  The consumer can eventually acquire ownership of the personal property by making an agreed-upon number of lease payments.  These payments, in the aggregate, are referred to as the "total of payments."  (§ 1812.622(l).)

10.     Studies show that the customer base for the rent-to-own industry consists primarily of low-income and financially-distressed consumers, a disproportionate number of whom are ethnic minorities.[1]  Rental-purchase arrangements offer immediate access to merchandise for what *appears* to be a low periodic payment, but in fact, such transactions are very costly.  The Federal Trade Commission has cited studies showing that the total cost of purchasing through a rent-to-own transaction is usually two or three times the retail price of comparable goods.

11.     The Karnette Act defines the term "fee" to mean "any payment, charge, fee, cost, or expense, however denominated, other than a rental payment."  (§ 1812.622(g).)

---

[1] *See* Testimony of Margot Saunders, Before a Hearing of the U.S. House of Representatives Financial Services Committee, 26 July 2011, entitled "Examining Rental Purchase Agreements and the Potential Role for Federal Regulation" *available at* https://www.govinfo.gov/content/pkg/CHRG-112hhrg67944/html/CHRG-112hhrg67944.htm (last accessed November 11, 2020).  According to the Federal Trade Commission's Survey of Rent-to-Own Customers, published in April 2000, 59% of rent-to-own customers had a household income of less than $25,000, and 41% were members of a minority community.

CLASS ACTION COMPLAINT

12.     The Karnette Act prohibits a lessor from charging any fee that is not permitted by the Karnette Act.  (§ 1812.624(a)(7).)

13.     For any fee that *is* permitted by the Karnette Act, a lessor can charge such a fee only to the extent it is both "reasonable" and "actually incurred by the lessor." (§ 1812.624(a)(7).)  The lessor has the burden of proof to establish that a fee was reasonable and that it was an actual cost incurred by the lessor.  (*Ibid.*)

## PLAINTIFF'S RENTAL-PURCHASE TRANSACTION

14.     On September 18, 2020, Plaintiff went to New Homeworld Outlet in San Leandro, California.  New Homeworld Outlet is a furniture retailer with whom Snap has an established business relationship.

15.     After considering available merchandise, Plaintiff expressed an interest in a bunk bed and mattress.  Following a conversation with the sales agent, Plaintiff agreed to complete the transaction through a rental-purchase agreement with Snap.  A true and correct copy of the rental-purchase agreement between Plaintiff and Snap, dated September 18, 2020, is attached hereto as Exhibit 1.

16.     As shown on page 1 of the rental-purchase agreement, Snap charged Plaintiff a "Processing Fee" in the amount of $39.00.  Plaintiff alleges that by charging the processing fee, Snap violated § 1812.624(a)(7) of the Karnette Act, as well as other provisions of California consumer-protection law.

## SNAP'S ARBITRATION CLAUSE

17.     Snap's standardized form of rental-purchase agreement contains a section entitled "Jury Trial Waiver and Arbitration Clause" ("Arbitration Clause").  (See Ex. 1 at 5-6.)

18.     The Arbitration Clause provides that Snap's customers can opt out of the clause by providing written notice to Snap within 60 calendar days of signing the rental-purchase agreement.  (Ex. 1 at 6.)  Plaintiff timely opted out of the Arbitration Clause.  Therefore, Plaintiff is not bound by any of the provisions of the Arbitration Clause.

19.     With respect to consumers who sign a rental-purchase agreement but do not timely opt out of the Arbitration Clause, the Arbitration Clause generally provides that disputes between

1  the consumer and Snap are to be resolved in individual arbitration or small claims court. However,
2  the Arbitration Clause expressly provides that injunctions and other equitable relief are not subject
3  to that restriction. Specifically, in the row that addresses the query "Do other options exist?," the
4  answer is "Yes" with a further explanation that "Both parties may seek remedies which don't claim
5  money damages. This includes pre-judgment seizure, injunctions, or equitable relief." (Ex. 1 at 5.)
6  Therefore, all of Snap's customers are authorized to seek equitable relief in court.

7      20.     This Complaint seeks injunctive, restitutionary, and other equitable relief on behalf
8  of all consumers who, within the limitations period, were charged a processing fee by Snap in
9  connection with a rental-purchase agreement entered into in the State of California.

10                                   **CLASS ACTION ALLEGATIONS**

11     21.     Pursuant to Code of Civil Procedure § 382, Plaintiff seeks equitable relief on behalf
12  of the following Class: "All individuals who, during the applicable statute of limitations, entered
13  into a rental-purchase agreement with Snap RTO LLC in the State of California and were charged
14  a processing fee. Excluded from the Class are all employees of Defendants, all employees of
15  Plaintiff's counsel, and the judicial officers to whom this case is assigned."

16     22.     Ascertainability. The members of the Class may be ascertained by reviewing records
17  in the possession of Defendants and/or third parties, including without limitation Defendants'
18  customer records and billing records.

19     23.     Common Questions of Fact or Law. This lawsuit is suitable for class treatment
20  because common questions of fact and law predominate over any individual issues. Common
21  questions include but are not limited to: (1) whether the processing fee charged by Defendants is a
22  fee that is permitted by the Karnette Act; (2) if so, whether the processing fee is reasonable; (3) if
23  so, whether the processing fee is an amount that is actually incurred by Snap; (4) whether
24  Defendants' conduct constitutes an unlawful or unfair business act or practice; (5) Defendants'
25  record-keeping practices; and (6) the appropriate remedies for Defendants' conduct, including the
26  appropriate terms of an injunction.

27

28

4

24. <u>Numerosity</u>. The Class is so numerous that joinder of all Class members would be impracticable. Plaintiff is informed and believes and thereon alleges that the Class consists of at least 100 members.

25. <u>Typicality and Adequacy</u>. The claims by which Plaintiff seeks equitable relief are typical of the claims of all other Class members. Plaintiff has no interests that are adverse to those of the other Class members. Plaintiff will fairly and adequately protect the interests of the Class members.

26. <u>Superiority</u>. A class action is superior to other methods for resolving this controversy. Because the amount of restitution or other monetary relief to which each Class member may be entitled is low in comparison to the expense and burden of individual litigation, it would be impracticable for Class members to redress the wrongs done to them without a class action forum. Furthermore, on information and belief, Class members do not know that their rights have been violated. Class certification would also conserve judicial resources and avoid the possibility of inconsistent judgments.

27. <u>Risk of Inconsistent or Varying Adjudications</u>. Prosecuting separate actions for equitable relief by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendants. Moreover, as a practical matter, adjudication of equitable relief with respect to individual Class members could be dispositive of the interests of others not parties to the individual adjudications or could substantially impair or impede their ability to protect their interests.

28. <u>Defendants Have Acted on Grounds Generally Applicable to the Class</u>. Defendants have acted on grounds that are generally applicable to the members of the Class, thereby making appropriate final injunctive relief and/or declaratory relief with respect to the Class as a whole.

/ / /

/ / /

/ / /

/ / /

**FIRST CAUSE OF ACTION**

(Violation of the Karnette Rental-Purchase Act)

29.    Plaintiff incorporates by reference the preceding paragraphs.

30.    Defendants violated the Karnette Act by charging Plaintiff a processing fee, which is a fee that is not permitted by the Karnette Act, in violation of § 1812.624(a)(7).

31.    Alternatively, if it is determined that the Karnette Act permits a lessor to charge a processing fee, the processing fee charged to Plaintiff was not reasonable, and/or was not actually incurred by Defendants, in violation of § 1812.624(a)(7).

32.    Plaintiff is informed and believes and thereon alleges that when Snap entered into rental-purchase agreements with other California consumers during the applicable limitations period, Snap violated, and continues to violate, the Karnette Act in the same way as alleged above regarding Plaintiff's rental-purchase transaction.  The unlawful charging of a processing fee affects many consumers throughout the State of California.  Plaintiff hereby notifies Snap that it must preserve and maintain all business records relating to the charging of processing fees in connection with rental-purchase agreements entered into in the State of California, regardless of where such records are located and regardless of the format in which they may be stored or maintained.

**SECOND CAUSE OF ACTION**

(Violation of the Consumers Legal Remedies Act)

33.    Plaintiff incorporates by reference the preceding paragraphs.

34.    Plaintiff and Class members are "consumers" within the meaning of § 1761(d) in that they sought or acquired goods and/or services for personal, family, or household purposes.

35.    The goods and/or services that are the subject of the rental-purchase agreements entered into by Plaintiff and Class members are "goods" and/or "services" within the meaning of § 1761(a) and (b).

36.    The rental-purchase agreements entered into by Plaintiff and Class members reflect "transactions" within the meaning of § 1761(e).

6

37.     Defendants have violated § 1770(a)(14) by representing that transactions reflected in the rental-purchase agreements entered into by Plaintiff and Class members involve rights or obligations that are prohibited by law.

## THIRD CAUSE OF ACTION

### (Unfair Competition)

38.     Plaintiff incorporates by reference the preceding paragraphs.

39.     By violating the Karnette Act as alleged above, and by violating the CLRA as alleged above, Defendants have engaged in a business practice that is unlawful, in violation of Bus. & Prof. Code § 17200 et seq.

40.     By violating the Karnette Act as alleged above, and by violating the CLRA as alleged above, Defendants have engaged in a business practice that is unfair, in violation of Bus. & Prof. Code § 17200 et seq.  Defendants' business practice of charging processing fees as alleged herein has no social utility since it serves only to increase the profit accruing to Defendants without providing any corresponding benefit to consumers.  Plaintiff could not reasonably have avoided her injuries.  There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

41.     Plaintiff has lost money or property as a result of Defendants' conduct alleged herein.

### PRAYER

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

On the First Cause of Action:

1.     For a public injunction enjoining Defendants from charging processing fees in violation of the Karnette Act with respect to rental-purchase agreements in California;

2.     For twenty-five percent of an amount equal to the total amount of payments required to obtain ownership if all payments were made under the rental-purchase agreement, subject to a minimum of $100 and a maximum of $1,000, pursuant to § 1812.636(a)(2);

3.     For an award of attorney's fees and costs, pursuant to § 1812.636(a)(3);

4.     For a judicial declaration that the processing fees charged by Defendants violate the Karnette Act, as well as restitution and other equitable relief as the Court deems proper, pursuant to

7

1 § 1812.636(a)(5);

2     <u>On the Second Cause of Action</u>:

3     5.    For a public injunction enjoining Defendants from representing that rental-purchase

4 agreements involve the charging of a processing fee when, in fact, such fees are prohibited by law,

5 pursuant to § 1780(a)(2);

6     6.    For an award of attorneys' fees and costs, pursuant to § 1780(e);

7     <u>On the Third Cause of Action</u>:

8     7.    For a public injunction enjoining Defendants from charging processing fees in

9 violation of the Karnette Act, and from representing that rental-purchase agreements involve the

10 charging of a processing fee when, in fact, such fees are prohibited by law;

11     8.    For restitution;

12     <u>On All Causes of Action</u>:

13     9.    For reasonable attorneys' fees pursuant to Cal. Code Civ. Proc., § 1021.5;

14     10.    For costs of suit;

15     11.    For pre-judgment interest; and

16     12.    For such other relief that the Court deems just and proper.

17

18 Dated: November 12, 2020        DOSTART HANNINK & COVENEY LLP

19

20                              _____

21                              ZACH P. DOSTART
                             Attorneys for Plaintiff

22 931814.1

23

24

25

26

27

28

8

Exhibit 1

THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.ne

# RENTAL-PURCHASE AGREEMENT

| | |
|---|---|
| Lease Company (Lessor): SNAP RTO LLC<br>P.O. Box 26561<br>Salt Lake City, UT 84126<br>Phone: (877) 557-3769 | Lessee: April Renee Spruell<br><br>REDACTED |
| Application ID: | Lease Date: 09/18/2020<br>3:29 PM |   Property Condition: New |

Description of goods being purchased from the Retailer (the "Property") further explained in Exhibit A:

## FORMATION OF AGREEMENT. New Homeworld Outlet Inc.

**ACQUISITION OF PROPERTY AS AGENT; NEW CONDITION; DESCRIPTION.** You are obtaining the Property as our agent. We own the Property unless and until you make the payments necessary to acquire ownership. You agree to obtain from the Retailer only new goods for personal, family or household purposes.

### IMPORTANT RENTAL-PURCHASE DISCLOSURES – INCLUDING COST AND PAYMENT

**NOTICE: YOU ARE RENTING THIS PROPERTY. YOU WILL NOT OWN IT UNTIL YOU MAKE ALL OF THE REGULARLY SCHEDULED PAYMENTS OR YOU USE THE EARLY PURCHASE OPTIONS. YOU DO NOT HAVE THE RIGHT TO KEEP THE PROPERTY IF YOU DO NOT MAKE REQUIRED PAYMENTS OR DO NOT USE THE EARLY PURCHASE OPTIONS. IF YOU MISS A PAYMENT, THE LESSOR CAN REPOSSESS THE PROPERTY, BUT, YOU MAY HAVE THE RIGHT TO THE RETURN OF THE SAME PROPERTY OR SIMILAR PROPERTY. SEE THE CONTRACT FOR AN EXPLANATION OF YOUR RIGHTS. YOU ARE NOT OBLIGATED TO PAY A SUM GREATER THAN THE LEASE CHARGE FOR A SINGLE LEASE TERM, PLUS ANY AMOUNTS FOR YOUR TERMINATION.**

**Cash Price of Property.** The Cash Price of the Property is $ 0.00, which is the amount you would have paid if you had purchased the Property from the Retailer with cash on the day of this Agreement, inclusive of any applicable sales or use tax.

**Total Cost of Lease; Periodic Payments; Processing Fee; Initial Payment; Cost of Rental.** Unless you exercise your 100-Day Option or Early Buy-Out Option set forth below, the "Total Cost" of the Property under this Agreement will be $ 39.00. The Total Cost is based on an Initial Payment of $ 0.00 payable on the date of this Agreement (the "Required Initial Payment"), if any, a processing fee (which is not a payment towards the cost of your rental) of $ 39.00 (the "Processing Fee"), if any, 24 additional payments of $ 94.36 (as adjusted, a "Regular Payment") each, payable twice each month. The Total Cost also reflects any additional cash paid today, if any. Your total initial payment due today is $ 39.00, which is the sum of the Required Initial Payment, if any, Processing Fee, if any, and any additional cash paid today. If you do not remit any applicable Processing Fee or Initial Payment at the time of purchase, it is included in the Regular Payments set forth above. The Total Cost does not include late payment, nonsufficient funds, default, pickup, reinstatement, or other fees, if any, disclosed below.  You should read this Agreement for an explanation of any applicable additional fees. The cost of your rental ("Cost of Rental") is the difference between the Total Cost and Cash Price, and will be $ 39.00.

**Expected Delivery Date; First Regular Payment.** The Required Initial Payment, if any, covers the rental period that begins on the date you receive the Property and ends on your first Regular Payment date. Your first Regular Payment date will be at least seven days after the later of 09/19/2020 (i)  (the "Expected Delivery Date"), and (ii) the date on which the Property is provided or delivered to you.

**100-Day Option.** At any time during the first 100 from the Expected Delivery Date, the "100-Day Option" applies, and you may acquire ownership of the Property by paying us the amount by which (i) the sum of the 100 – Day Amount, the Processing Fee, if any, applicable sales or use taxes, and any unpaid fees we have charged, exceeds (ii) the amount of any Initial Payment and Regular Payments you have made. The 100 Day Amount is $ 1,006.41.

**Early Buy-Out Option.** After your 100-Day Cash Payoff Option expires, you may exercise an early purchase option ("Early Buy-Out Option"), which is an amount equal to (i) any past due payments and fees plus (ii) the Cash Price stated in this Agreement multiplied by a fraction that has as the numerator the number of periodic payments remaining under this Agreement and that has the denominator the total number of periodic payments. Within 10 days after you execute this Agreement, we will personally deliver or send by first-class mail to you a notice informing you of this right, including the amount you must pay to acquire ownership and the date by which payment must be made. The attached chart shows the amount required to exercise your Early Buy-Out Option after each renewal payment, assuming you make each periodic payment on time.

**No Security Deposit Required. No security deposit is required under this Agreement.**

**Lease Term, Subsequent Terms; Renewal.** Your initial lease term expires 60 days from the later of the Expected Delivery Date or the date on which the Property is provided or delivered to you. Until (i) you obtain ownership the

Exhibit 1
Page 1

REDACTED

THIS IS A COPY

The Authoritative Copy of this record is held at na2.docusign.net

Property as provided in this Agreement, (ii) you terminate this Agreement as permitted hereunder and surrender the Property in its original condition, less reasonable wear and tear, as of the end of a lease term, or (iii) we terminate this Agreement in a manner permitted hereunder, this Agreement will automatically and repeatedly renew for additional lease terms, each 60 days in length.

**Maintenance of the Property.** We will keep the Property in good working order and repair without charging any fee to you. We will utilize any manufacturer's or seller's applicable warranty. If the repair or replacement cannot be immediately effectuated, we will provide substitute Property of comparable quality and condition. You will not be charged or held liable for any rental fee for any period during which the Property that is subject to this Agreement is not in good working order. Nothing in this section applies to the repair of damage resulting from your intentional, willful, wanton, reckless or negligent conduct. If any manufacturer's or seller's warranty is in force when you acquire the Property, it shall be transferred to you if allowed by the terms of the warranty.

**Reinstatement Rights.** If you are in default and/or the Property is surrendered or repossessed, you may reinstate this Agreement without losing any rights or options by paying: (i) all past due charges; and (ii) if allowed by applicable law, the reasonable costs of pickup and redelivery. You may exercise your reinstatement right within 180 days of your default or surrender/repossession of the Property or such longer period provided to you under applicable law.

**Right to Terminate.** You may terminate your lease payment obligations under this Agreement without penalty by paying all Regular Payments, fees and charges that are due or past due and voluntarily surrendering or returning the Property in its original condition, less reasonable wear and tear at the expiration of any lease term.

**Late Fees.** We reserve the right to charge a late fee for past due payments, after allowing for any grace period, of the lesser of 5 percent of the payment or $5.00 dollars, except that a minimum total fee of $2.00 dollars may be required.

**Other Important Terms.** See the other parts of this Agreement for additional important information on termination procedures, purchase option rights, responsibilities for loss, damage or destruction of the Property, actual or implied warranties, taxes, other charges and penalties you may incur, and other important information. You acknowledge that we provided you with a completed copy of this Agreement. You acknowledge that we made the disclosures at or before the consummation of the Agreement.

**Forty-Eight Hour Review Available. You have 48 hours to review this Agreement prior to signing.**

All other fees which may be charged, include fees for:
(1) Returned Payments or Nonsufficient Funds Fee: $ 20.00
(2) Reinstatement Fees: None (other than pickup and redelivery charges allowed by law)

| TOTAL OF PAYMENTS | COST OF RENTAL | CASH PRICE |
|---|---|---|
| $ 2,264.43 | $ 39.00 | $ 0.00 |
| You must pay this amount to own the property if you make all the regular payments. | Amount over cash price you will pay if you make all regular payments, plus the processing fee. | Property available at this price for cash from the merchant. See about your early purchase option rights. |

| | AMOUNT OF EACH PAYMENT | NUMBER OF PAYMENTS | RENTAL PERIOD |
|---|---|---|---|
| You can buy the property for less under the early purchase options. | $ 94.36 | | |
| | per twice each month | 24 | 12 |

By signing, you agree that you received a legible copy of this Agreement. You agree to the terms of this Agreement on all 6 pages, including the "Customer Authorization for Payments via ACH," the "Arbitration Clause and Waiver of Jury Trial," and the other terms below.

Customer Signature:
DocuSigned by:
**April Spruell**
749A4683D258408...

The Lease Company's authorized signature indicates the Lease Company has accepted the terms, conditions and obligations of the Agreement and that the Lease Company agrees to this Agreement.

Snap RTO LLC By: Matt Browning Title: COO

**TERMINATION.** You may terminate (end) this Agreement at the end of any lease term by satisfying the requirements of this paragraph. You must promptly return the Property to us in accordance with our directions and pay amounts accrued. We may terminate this Agreement at any time if you are in default of your payment or other obligations. You must return the Property to the place we designate. Upon termination, you agree to pay the following charges: Any unpaid Regular Payments, fees and charges, plus any official fees and taxes imposed in connection with termination, including, but not limited to any applicable fines, surcharges, and taxes. You must also pay any excessive wear and use fees as provided in

REDACTED
THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.net

this Agreement, subject to limitations of applicable law.

**STANDARDS FOR WEAR AND USE.** You may be charged for excess wear and use when you return the Property to us. The following standards apply for determining unreasonable or excess wear and use: You will not paint or letter the Property or modify any identification number of the Property. You will not add, remove or modify any accessories, equipment or parts without our prior written permission. The Property will not: Have damage, mechanical or electrical malfunction as applicable; be torn, burned, stained or shredded; have any dents, mold, or damage from water, sand, or freezing; or have inoperable parts. You must return the Property with all of its original parts.

**PROPERTY LOSS, THEFT OR DAMAGE.** If the Property becomes lost, stolen, damaged or destroyed, you agree to pay us an amount equal to the lesser of: (i) the Property's fair market value, as of the time it is lost, stolen, damaged or destroyed (determined by reference to an industry value guide we select); or (ii) the remainder of the cash price.

**WARRANTIES.** We make no express warranty on the Property, and, unless prohibited by law, the following sentences apply. YOU ARE LEASING THE PROPERTY "AS IS". WE MAKE NO EXPRESS WARRANTIES ON THE PROPERTY. WE DISCLAIM ANY WARRANTIES IMPLIED BY LAW, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR ANY PARTICULAR PURPOSE.

**DEFAULT, REPOSSESSION, AND OTHER REMEDIES. You will be in default of this Agreement if:**

- You do not pay any payment or other amount under the Agreement as provided or when we make demand.

- You give us any false or misleading information.

- You lose possession of the Property by confiscation, forfeiture or other involuntary transfer regardless of whether the Property is the subject of judicial or administrative proceedings.

- You die and there is no surviving customer.

- The Property is lost, stolen or damaged beyond repair.

- You assign the Agreement or transfer the Property.

- Unless prohibited by law, you violate any Agreement term.

If this Agreement is in default, we may at our election, and subject to any waiting period imposed by law, take any actions permitted by law, including without limitation one of the following actions, none of which will cure your default:

-Until you purchase the Property as provided in this Agreement, or the Property is repossessed or surrendered, in each case as permitted under this Agreement, this Agreement shall continue to renew, and we may continue to charge you rent under the terms of this Agreement.

-We may take any action we believe to be necessary or advisable to protect our interest in the Property.

-We may peacefully repossess the Property wherever we may find it. We will give any repossession notices required by law. After repossession or surrender, we will hold the Property, subject to any right you may have under applicable law to cure the default or recover the Property.

-Sums we spend taking any permitted action will be added to the amount accrued, unless prohibited by law.


**TAXES.** You must immediately pay or reimburse us if we pay for you all government charges relating to the Property, including, but not limited to fees, taxes, fines and surcharges, whether assessed on you, us, or the Property. We may add the amount to what you owe us if you do not pay us when we make demand. If you do not pay such amounts when they are assessed (unless such results from our negligence), you must pay any penalties when due or reimburse us if we pay them. You must pay the charges in this paragraph even if such charges are not billed to us or to you until after the end of the Agreement term, as long as such charges are applicable to some part of the Agreement term. You will not have to pay our income taxes.

**TITLE.** We retain title to the Property for the term of the lease and until you acquire ownership.

**PAYMENTS. We have scheduled debits from your checking account, as provided below:**

| CONSUMER AUTHORIZATION FOR PAYMENTS VIA ACH (ACH DEBITS) |
|---|

**ACH Debits for Payment(s) and Range of Debits.** You authorize us to debit funds from your bank account for the amount of the lease payments and all other amounts accrued as provided in this Agreement, in the following range of amounts $1.00 - $500.00. You authorize us to debit lesser amounts than your payment, based on your payment history. Our debits will be in such range, unless we notify you.

**ACH Debits for Returned Payment Fee. You authorize us to debit $ 20.00 for any returned payment fee.**

**Notice of Variation.** If a debit falls outside the specified range, we will email you notice of the amount and date on or after which we will debit such amount. You will get at least 10 calendar days' notice.

**Payment Dates.** You authorize debits on or after the dates for payment provided in the Agreement, unless you otherwise direct us in writing. We will debit on or after every payment provided in this Agreement; provided, however, that we reserve the right to debit on the banking day immediately preceding your regular payment date if the payment date falls on a non-banking day (i.e., a holiday or weekend day).

REDACTED

**Corrections.** You authorize us to debit and credit your account to correct errors.

**Effective Date.** The transaction's effective date is the Agreement Date provided above.

**Account and Routing.** You authorize the debits to this account: Number \*\*\*\*\*      Routing Number \*\*\*\*\*      .

**Change in Account Information:** You authorize us to debit any new account you give us information for. If any account is rejected we will debit any account we have on file.

**Stop Payments.** You may stop payment at least three banking days before a payment.

**Revocation, Cancellation, Termination.** This authorization applies until you revoke it. You must provide at least three days' notice to cancel. Call at (877) 557-3769 at least three days before the proposed effective date of the termination.

**Other Changes.** Notify us at least five business days before the next billing date if your account information changes.

**Acknowledgments.** You read this authorization in print, on a computer screen, or other visual display. You acknowledge and agree to the following: this ACH Debit Authorization is not an instrument governed by Article 3 of the Uniform Commercial Code. Print and retain a hard copy or electronic copy of this ACH Debit Authorization.

**NON-WAIVER.** We do not waive our rights or remedies under this Agreement by failing to exercise them at any time.

**COMMUNICATING WITH YOU; CALL RECORDING: (877) 557-3769**

**ENTIRE AGREEMENT, NO ADDITIONAL PROMISES, WRITTEN AND SIGNED CHANGES ONLY.** This Agreement, together with the other documents referred to herein, including but not limited to your purchase receipt and final payment amount and schedule, is our entire agreement. We have made no promises to you not contained in this Agreement or in such other documents. Any change to this Agreement must be written and signed by you and us.

**CUSTOMER MODIFIED PAYMENT DATES AND FREQUENCY.** The dates for, frequency of, number of and amount of Regular Payments in this Agreement are based upon the payday information you provided with your application. You may contact our customer service department or, if available use automated means, if available, to request a change of the scheduled dates for and frequency of Regular Payments. If we accept a change in the scheduled dates for or frequency of Regular Payments, the amount of each Regular Payment will automatically be modified so that that Total Cost, and the period over which the Total Cost is paid, will remain the same as prior to the requested change. Any refences in this Agreement to the number, frequency, timing and amount of Regular Payments refers to such number, frequency, time and amount as may be modified by Snap at your request.

**SEVERABILITY.** If a court or other dispute resolution body finds any part of this Agreement to be void or unenforceable, this Agreement is to be read as if that part were never a part of this Agreement. The rest of the Agreement will be enforceable.

**PROHIBITED ACTS.** You will keep the Property free from any liens or claims. You will not pawn or pledge the Property. You will not move the Property outside of the address you provided to us, and as updated, unless it is to return the Property to us, or our designee. To the extent use of the Property requires any minimum criteria for use, including for example a permit, license, or minimum age, you will not allow any improper use of the Property. As applicable, for any boat, motorized vehicle, or otherwise applicable, you will not permit any person, including yourself, to operate the Property while such person is impaired by drugs, alcohol or from any other cause. You will not use the Property for commercial purposes.

**WARNING: Unless you have acquired ownership of the Property, attempting to sell, pawn, or lien the Property violates state law.**

**ASSIGNMENT.** You may not assign this Agreement or transfer the Property without our prior written permission. We may assign all of our rights under this Agreement. Any person we assign it to may reassign it.

**ACCORD AND SATISFACTION.** Any statement accompanying your payment to the effect that your balance is paid in full will not bind us. Our deposit of any such payment will not constitute an accord and satisfaction, and we may apply the payment to your account.

**INSURANCE.** We do not require you to purchase insurance from us and we have not provided any insurance to you.

**RECEIPT.** Upon your request, we are required to provide you with a written receipt for each payment made.

**GOVERNING LAW.** The law of the state in which you reside when you signed this Agreement and applicable federal law will govern the Agreement and the interpretation of it, except that the Federal Arbitration Act expressly governs the Jury Trial Waiver and Arbitration Clause. You acknowledge that you reside at the address listed above on the Agreement Date.

**CONSUMER REPORT.** You have authorized us to obtain one or more consumer reports on you in connection with this transaction.

**CREDIT REPORTING.** We may report information to credit bureaus or other third-parties about your account, including late or missed payments, and any positive or negative account information may be reflected in your credit report.

**INDEMNIFICATION.** You agree to indemnify us and hold us and our assignees, agents, and insurers harmless from all damages, injuries, claims, demands, and expenses, including reasonable attorney's fees to the extent permitted by law, arising out of the condition, maintenance, use or operation of the Property, including a claim under the strict liability doctrine.

**NOTICES.** Notices may be given personally or sent by first class mail. Notice mailed to us must be sent to the address

REDACTED

THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.net

shown in this Agreement, or as we otherwise direct from time to time. Notices to us are deemed given when they are personally given or actually received at our address. Notices are deemed given to you when they are personally given or when placed in the mail, addressed to you at your address then shown on our records, even though you might not actually receive our mailed notice. You agree that 30 days' notice is reasonable, unless state law requires a longer period, in which case you agree that the state-required period is reasonable. You authorize us to send notices to your email address unless prohibited by law.

**JURY TRIAL WAIVER AND ARBITRATION CLAUSE.** By signing, you agree to this Jury Trial Waiver and Arbitration Clause ("Clause").

| Background and Scope | | |
|---|---|---|
| What is arbitration? | An alternative to court. | In arbitration, a third party ("Arbiter") solves Disputes in a hearing ("hearing"). You, related third parties, and we, waive the right to go to court. Such "parties" forgo jury trials. |
| Is it different from court and jury trials? | Yes. | The hearing is private and less formal than court. Arbiters may limit pre-hearing fact finding, called "discovery." The decision is final. Courts rarely overturn Arbiters. |
| Who does the Clause cover? | You, Us, and Others. | This Clause governs the parties, their heirs, successors, assigns, and third parties related to any Dispute. |
| Which Disputes are covered? | All Disputes. | In this Clause, the word "Disputes" has the broadest possible meaning. This Clause governs all "Disputes" involving the parties. This includes all claims even indirectly related to your application and agreements with us. This includes claims related to information you previously gave us. It includes all past agreements. It includes, as may be applicable, any additional periods, extensions, renewals, and plans. It includes claims related to damaged property, buyout, reinstatement, loss, damage, warranty, maintenance, collection, possession, privacy, and customer information. It includes claims related to setting aside this Clause. It includes claims about the Clause's validity and scope. It includes claims about when to arbitrate. |
| Are you waiving rights? | Yes. | You waive your rights to:<br>1. Have juries solve Disputes.<br>2. Have courts, other than small-claims courts, solve Disputes.<br>3. Serve as a private attorney general or in a representative capacity.<br>4. Be in a class action. |
| Are you waiving class action rights? | Yes. | COURTS AND ARBITERS WON'T ALLOW CLASS ACTIONS. You waive your rights to be in a class action, as a representative and a member. Only individual arbitration or small-claims courts, will solve Disputes. You waive your right to have representative claims. Unless reversed on appeal, if a court invalidates this waiver, then the agreement to arbitrate will be void, and Disputes will be resolved by a judge, but not a jury. |
| What law applies? | The Federal Arbitration Act ("FAA"). | This transaction involves interstate commerce. Thus, the FAA governs. If a court finds the FAA doesn't apply, and the finding can't be appealed, then the state law where you were when you signed, governs. The Arbiter must apply substantive law consistent with the FAA. The Arbiter must follow statutes of limitation and privilege claims. |
| Can the parties try to solve Disputes first? | Yes. | We can try to solve Disputes if you call us at **(877) 557-3769.** If this doesn't solve the Dispute, mail us written notice, within 100 days of the Dispute date. In your notice, tell us the details and how you want to solve it. We will try to solve the Dispute. If we make a written offer ("Settlement Offer"), you can reject it and arbitrate. If we don't solve the Dispute, either party may start arbitration. To start arbitration, contact an Arbiter or arbitration group listed. No party will disclose settlement proposals to the Arbiter during arbitration. |
| How should you contact us? | By mail. | Send mail to: Snap RTO LLC Attention: Arbitration. P.O. Box 26561, Salt Lake City, UT 84126. You can call us or use certified mail to confirm receipt. |
| Can small-claims court solve some Disputes? | Yes. | Each party has the right to arbitrate, or to go to small-claims court if the small-claims court has the power to hear the Dispute. Arbitration will solve all Disputes that the small-claims court does not have the power to hear. If there is an appeal from small-claims court, or if a Dispute changes so that the small-claims court loses the power to hear it, then the Dispute will only be heard by an Arbiter. |
| Do other options exist? | Yes. | Both parties may use lawful self-help remedies. This includes set-off or repossession and sale of the Property. Both parties may seek remedies which don't claim money damages. This includes pre-judgment seizure, injunctions, or equitable relief. |
| Will this Clause continue to govern? | Yes, unless otherwise agreed. | The Clause stays effective, unless the parties sign an agreement stating it doesn't. The Clause governs if you rescind the transaction. It governs if you default, renew, prepay, or pay. It governs if you terminate, if you reinstate, and if you return the Property. It governs if your Agreement is impacted by bankruptcy. The Clause remains effective, despite a transaction's termination, amendment, expiration, or performance. |

| Process | | |
|---|---|---|
| How does arbitration start? | Mailing a notice. | Either party may mail the other a request to arbitrate, even if a lawsuit has been filed. The notice should describe the Dispute and relief sought. The receiving party must mail a response within 20 days. If you mail the demand, you may choose the arbitration group. Or, your demand may state that you want the parties to choose a local Arbiter. If related third parties or we mail the demand, you must respond in 20 days. Your response must choose an arbitration group or propose a local Arbiter. If it doesn't, we may choose the group. |
| Who arbitrates? | AAA, JAMS, or an agreed Arbiter. | You may select the American Arbitration Association ("AAA") (1-800-778-7879) http://www.adr.org or JAMS |

THIS IS A COPY

| | | (1-800-352-5267) http://www.jamsadr.com. The parties may also agree in writing to a local attorney, retired judge, or Arbiter in good standing with an arbitration group. The Arbiter must arbitrate under AAA or JAMS consumer rules. You may get a copy of these rules from such group. Any rules that conflict with any of our agreements with you, don't apply. If these options aren't available, and the parties can't agree on another, a court may choose the group. The parties will then obtain an Arbiter under such group's rules. Such Arbiter must enforce your agreements with us, as they are written. |
| Will the hearing be held nearby? | Yes. | The Arbiter will order the hearing within 30 miles of your home or where the transaction occurred. |
| What about appeals? | Appeals are limited. | The Arbiter's decision will be final. A party may file the Arbiter's award with the proper court. Arbitration will solve appeals of a small-claims court judgement. A party may appeal under the FAA. If the amount in controversy exceeds $1,500.00, a party may appeal the Arbiter's finding. Such appeal will be to a<br><br>3-Arbiter panel from the same arbitration group. The appeal will be de novo, and solved by majority vote. |

### Arbitration Fees and Awards

| | | |
|---|---|---|
| Will we advance Arbitration Fees? | Yes, but you may pay costs. | We advance your "Arbitration Fees" if you ask us to. This includes filing, administrative, hearing, and Arbiter's fees. You pay your attorney fees and other expenses. |
| Are damages and attorney fees possible? | Yes, if allowed. | The Arbiter may award the same damages as a court. Arbiters may award reasonable attorney fees, and expenses, if allowed by law. |
| Will you pay Arbitration Fees if you win? | No. | If the Arbiter awards you funds, you don't reimburse us the Arbitration Fees. |
| Will you ever pay Arbitration Fees? | Yes/No. | If the Arbiter doesn't award you funds, then you may repay the Arbitration Fees. The Arbiter will decide whether you'll pay. If you must pay Arbitration Fees, the amount won't exceed state court costs. |
| What happens if you win? | You could get more than the Arbiter awarded. | If an Arbiter's award to you exceeds our last Settlement Offer, we will pay 3 amounts. We will pay the greater of the award amount or $500.00 ("bonus payment"). We will pay your attorney twice the attorney fees conferred ("attorney premium"). If the Arbiter orders, we will pay reasonable expert witness costs and other costs you incurred ("cost premium"). If we never made a Settlement Offer, we will pay the bonus payment, attorney premium, and any cost premium. The Arbiter may order the process for payment. If a law allows you more, this Clause won't prevent such award. We won't seek attorney fees and expenses. |
| Can an award be explained? | Yes. | A party may request details from the Arbiter, within 14 days of the ruling. Upon such request, the Arbiter will explain the ruling in writing. |

### Other Options

| | | |
|---|---|---|
| If you don't want to arbitrate, can you still get a transaction? | Yes. You can get our services and decide not to arbitrate. | Consider these choices:<br>1. Informal Dispute Resolution. Contact us, and attempt to settle any Disputes.<br>2. Small-claims Court. Seek to solve Disputes in small-claims court, within state law limits.<br>3. Get a Lease Without the Clause. Write to us and ask for an Agreement without the Clause.<br>4. Opt-Out of Arbitration. Sign and then timely opt-out. |
| Can you opt-out of the Clause? | Yes. Within 60 days. | Write us within 60 calendar days of signing your agreement to opt-out of the Clause for that agreement. List your name, address, account number and date. List that you "opt out." If you opt out, it will only apply to that agreement. |

THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.net

REDACTED

## Snap RTO LLC

### Your Consumer Report and the Price You Pay for a Lease-Purchase Agreement.

| | |
|---|---|
| **What is a consumer report?** | A consumer report is a record of transactions that you have initiated with others and your performance with respect to those transactions. It can include information about whether you pay your bills on time, your bank account history and/or how much you owe to others. |
| **How did we use your consumer information?** | We used information from your consumer report(s) to set the terms of the lease-purchase we are offering you, such as the rental fees, and length of term.<br>The lease-purchase terms offered to you may be less favorable than the lease-purchase terms offered to consumers who have better transaction histories. |
| **What if there are mistakes in your consumer report?** | You have the right to dispute any inaccurate information in your consumer report(s).<br>If you believe there are mistakes on your consumer report(s), you may contact Data X, Clarity Services and/or CoreLogic, which is/are the consumer reporting agency(ies) from which we obtained your consumer report(s).<br>It is a good idea to check your consumer report to make sure the information it contains is accurate. |
| **How can you obtain a copy of your consumer report?** | Under Federal law, you have the right to obtain a copy of your consumer report(s) without charge for 60 days after you receive this notice. To obtain your free report, contact:<br><br>**Data X**<br>Consumer Reporting Division<br>325 E Warm Springs Road STE 202<br>Las Vegas, Nevada 89119<br>Phone: 800-295-4790<br>Fax: 702-853-6969<br>http://consumers.dataxltd.com<br><br>**Clarity Services, Inc.**<br>PO Box 5717<br>Clearwater, FL 33758<br>Phone:866-390-3118<br>Fax: 727-712-9040<br>http://clarityservices.com/support/<br><br>**CoreLogic**<br>Consumer Relations Department<br>P.O. Box 509124<br>San Diego, CA 92150<br>1-800-815-8664 |
| **How can you get more information about consumer reports?** | For more information about consumer reports and your rights under Federal law, visit the Consumer Financial Protection Bureau's website at www.consumerfinance.gov/learnmore. |

Print and retain a hard copy or electronic copy

REDACTED

THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.net

## EARLY PAYMENT CHART

The chart below shows the amount required to exercise your early purchase option after each renewal payment, assuming you make each periodic payment on time.

| #  | Renewal Payment | Total Purchase Price |
|----|-----------------|----------------------|
| 1  | $ 94.36         | $ 1,006.41           |
| 2  | $ 94.36         | $ 912.05             |
| 3  | $ 94.36         | $ 817.69             |
| 4  | $ 94.36         | $ 723.33             |
| 5  | $ 94.36         | $ 628.97             |
| 6  | $ 94.36         | $ 534.61             |
| 7  | $ 94.36         | $ 440.25             |
| 8  | $ 94.36         | $ 911.29             |
| 9  | $ 94.36         | $ 860.23             |
| 10 | $ 94.36         | $ 809.17             |
| 11 | $ 94.36         | $ 758.12             |
| 12 | $ 94.36         | $ 707.06             |
| 13 | $ 94.36         | $ 656.00             |
| 14 | $ 94.36         | $ 604.94             |
| 15 | $ 94.36         | $ 553.88             |
| 16 | $ 94.36         | $ 502.83             |
| 17 | $ 94.36         | $ 451.77             |
| 18 | $ 94.36         | $ 400.71             |
| 19 | $ 94.36         | $ 349.65             |
| 20 | $ 94.36         | $ 298.59             |
| 21 | $ 94.36         | $ 247.53             |
| 22 | $ 94.36         | $ 196.48             |
| 23 | $ 94.36         | $ 145.42             |
| 24 | $ 94.36         | $ 0.00               |



DOSTART
HANNINK &
COVENEY
LLP

4180 LA JOLLA VILLAGE DRIVE, SUITE 530
LA JOLLA, CALIFORNIA 92037-1474
TELEPHONE: 858-623-4200
FAX: 858-623-4299

ZACH P. DOSTART
DIRECT DIAL 858-623-4275
E-MAIL: ZDOSTART@SDLAW.COM

December 3, 2020

VIA CERTIFIED MAIL RETURN RECEIPT REQUESTED

Delivered to:                                     For the Attention of:
Matthew Hawkins, Registered Agent                 Snap RTO LLC
1193 West 2400 South
Salt Lake City, UT 84119

  Re: Consumers Legal Remedies Act, California Civil Code §§ 1750 *et seq.*

Dear Mr. Hawkins:

  This law firm represents April Spruell. We write this letter pursuant to California Civil Code § 1782, which is part of the Consumers Legal Remedies Act ("CLRA").

  In accordance with California Civil Code § 1782(a), April Spruell, on behalf of herself and all other similarly situated consumers in California (collectively, the "Class"), hereby notifies you that Snap RTO LLC ("Snap") has violated the CLRA through misleading and unlawful business practices regarding rental-purchase agreements entered into in the State of California.

  Snap violates § 1770(a)(14) of the CLRA by representing that its rental-purchase agreements involve an obligation by the customer to pay a $39.00 processing fee when, in fact, the processing fee is prohibited by the Karnette Rental-Purchase Act, Cal. Bus. & Prof. Code § 1812.620 et seq.

  Pursuant to Civil Code § 1782, we hereby request that, within thirty (30) days of your receipt of this letter, Snap take the following steps to cure its improper practices:

  1. Identify all persons who, within the three years prior to the date of this letter, entered into a rental-purchase agreement with Snap in the State of California and were charged a processing fee;

  2. Make prompt restitution to Ms. Spruell and to all such identifiable consumers of all amounts charged for processing fees within the past three years; and

  3. Cease charging processing fees to consumers who enter into rental-purchase agreements with Snap in the State of California.



Snap RTO LLC
December 3, 2020
Page 2

Thank you for your attention to this matter.

Sincerely,
DOSTART HANNINK & COVENEY LLP

**Zach P. Dostart**

933509.1



# Superior Court of California, County of Alameda
## Alternative Dispute Resolution (ADR) Information Packet

The person who files a civil lawsuit (plaintiff) must include the ADR Information Packet with the complaint when serving the defendant. Cross complainants must serve the ADR Information Packet on any new parties named to the action.

> The Court *strongly encourages* the parties to use some form of ADR before proceeding to trial. You may choose ADR by:
>
> - Indicating your preference on Case Management Form CM-110;
>
> - Filing the Stipulation to ADR and Delay Initial Case Management Conference for 90 Days (a local form included with the information packet); or
>
> - Agree to ADR at your Initial Case Management Conference.
>
> **QUESTIONS?**  Call (510) 891-6055. Email adrprogram@alameda.courts.ca.gov
> Or visit the court's website at http://www.alameda.courts.ca.gov/adr

### What Are The Advantages Of Using ADR?

- *Faster* –Litigation can take years to complete but ADR usually takes weeks or months.

- *Cheaper* – Parties can save on attorneys' fees and litigation costs.

- *More control and flexibility* – Parties choose the ADR process appropriate for their case.

- *Cooperative and less stressful* – In mediation, parties cooperate to find a mutually agreeable resolution.

- *Preserve Relationships* – A mediator can help you effectively communicate your interests and point of view to the other side. This is an important benefit when you want to preserve a relationship.

### What Is The Disadvantage Of Using ADR?

- *You may go to court anyway* – If you cannot resolve your dispute using ADR, you may still have to spend time and money resolving your lawsuit through the courts.

### What ADR Options Are Available?

- *Mediation* – A neutral person (mediator) helps the parties communicate, clarify facts, identify legal issues, explore settlement options, and agree on a solution that is acceptable to all sides.

  o **Court Mediation Program**: Mediators do not charge fees for the first two hours of mediation. If parties need more time, they must pay the mediator's regular fees.

Some mediators ask for a deposit before mediation starts which is subject to a refund for unused time.

- ○ **Private Mediation**: This is mediation where the parties pay the mediator's regular fees and may choose a mediator outside the court's panel.

- *Arbitration* – A neutral person (arbitrator) hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial and the rules of evidence are often relaxed. Arbitration is effective when the parties want someone other than themselves to decide the outcome.

  - ○ **Judicial Arbitration Program** (non-binding): The judge can refer a case or the parties can agree to use judicial arbitration. The parties select an arbitrator from a list provided by the court. If the parties cannot agree on an arbitrator, one will be assigned by the court. There is no fee for the arbitrator. The arbitrator must send the decision (award of the arbitrator) to the court. The parties have the right to reject the award and proceed to trial.

  - ○ **Private Arbitration** (binding and non-binding) occurs when parties involved in a dispute either agree or are contractually obligated. This option takes place outside of the courts and is normally binding meaning the arbitrator's decision is final.

## Mediation Service Programs In Alameda County

Low cost mediation services are available through non-profit community organizations. Trained volunteer mediators provide these services. Contact the following organizations for more information:

**SEEDS Community Resolution Center**
1968 San Pablo Avenue, Berkeley, CA 94702-1612
Telephone: (510) 548-2377     Website: www.seedscrc.org
Their mission is to provide mediation, facilitation, training and education programs in our diverse communities – **S**ervices that **E**ncourage **E**ffective **D**ialogue and **S**olution-making.

**Center for Community Dispute Settlement**
291 McLeod Street, Livermore, CA 94550
Telephone: (925) 373-1035     Website: www.trivalleymediation.com
CCDS provides services in the Tri-Valley area for all of Alameda County.

*For Victim/Offender Restorative Justice Services*
**Catholic Charities of the East Bay: Oakland**
433 Jefferson Street, Oakland, CA 94607
Telephone: (510) 768-3100     Website: www.cceb.org
Mediation sessions involve the youth, victim, and family members work toward a mutually agreeable restitution agreement.

**ALA ADR-001**

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address) | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.:        FAX NO. (Optional): <br> E-MAIL ADDRESS (Optional): <br> ATTORNEY FOR (Name): | |

**SUPERIOR COURT OF CALIFORNIA, ALAMEDA COUNTY**

STREET ADDRESS:
MAILING ADDRESS:
CITY AND ZIP CODE:
BRANCH NAME

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| **STIPULATION TO ATTEND ALTERNATIVE DISPUTE RESOLUTION (ADR) AND DELAY INITIAL CASE MANAGEMENT CONFERENCE FOR 90 DAYS** | CASE NUMBER: |
|---|---|

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

This stipulation is effective when:

- All parties have signed and filed this stipulation with the Case Management Conference Statement at least 15 days before the initial case management conference.
- A copy of this stipulation has been received by the ADR Program Administrator, 1225 Fallon Street, Oakland, CA 94612.

1. Date complaint filed: _____. An **Initial Case Management Conference** is scheduled for:

   Date:                    Time:                    Department:

2. Counsel and all parties certify they have met and conferred and have selected the following ADR process (check one):

   ☐ Court mediation          ☐ Judicial arbitration
   ☐ Private mediation        ☐ Private arbitration

3. All parties agree to complete ADR within 90 days and certify that:

   a. No party to the case has requested a complex civil litigation determination hearing;
   b. All parties have been served and intend to submit to the jurisdiction of the court;
   c. All parties have agreed to a specific plan for sufficient discovery to make the ADR process meaningful;
   d. Copies of this stipulation and self-addressed stamped envelopes are provided for returning endorsed filed stamped copies to counsel and all parties;
   e. Case management statements are submitted with this stipulation;
   f. All parties will attend ADR conferences; and,
   g. The court will not allow more than 90 days to complete ADR.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

_____        ▶ _____
(TYPE OR PRINT NAME)                           (SIGNATURE OF PLAINTIFF)

Date:

_____        ▶ _____
(TYPE OR PRINT NAME)                           (SIGNATURE OF ATTORNEY FOR PLAINTIFF)

Form Approved for Mandatory Use
Superior Court of California,
County of Alameda
ALA ADR-001 [New January 1, 2010]

**STIPULATION TO ATTEND ALTERNATIVE DISPUTE RESOLUTION (ADR) AND DELAY INITIAL CASE MANAGEMENT CONFERENCE FOR 90 DAYS**

Page 1 of 2
Cal. Rules of Court,
rule 3.221(a)(4)

ALA ADR-001

| PLAINTIFF/PETITIONER: | CASE NUMBER.: |
|---|---|
| DEFENDANT/RESPONDENT: | |

Date:

▶ _____

_____

(TYPE OR PRINT NAME)                    (SIGNATURE OF DEFENDANT)

Date:

▶ _____

_____

(TYPE OR PRINT NAME)                    (SIGNATURE OF ATTORNEY FOR DEFENDANT)

Form Approved for Mandatory Use
Superior Court of California,
County of Alameda
ALA ADR-001 [New January 1, 2010]

**STIPULATION TO ATTEND ALTERNATIVE DISPUTE RESOLUTION (ADR)
AND DELAY INITIAL CASE MANAGEMENT CONFERENCE FOR 90 DAYS**

Cal. Rules of Court,
rule 3.221(a)(4)

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:

**CM-110**

FOR COURT USE ONLY

TELEPHONE NO.:   FAX NO. *(Optional)*:
E-MAIL ADDRESS *(Optional)*:
ATTORNEY FOR *(Name)*:

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF**
STREET ADDRESS:
MAILING ADDRESS:
CITY AND ZIP CODE:
BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| **CASE MANAGEMENT STATEMENT** | CASE NUMBER: |
|---|---|
| *(Check one):*  ☐ **UNLIMITED CASE** (Amount demanded exceeds $25,000)   ☐ **LIMITED CASE** (Amount demanded is $25,000 or less) | |

A **CASE MANAGEMENT CONFERENCE** is scheduled as follows:
Date:                Time:                Dept.:        Div.:            Room:
Address of court *(if different from the address above)*:

☐ Notice of Intent to Appear by Telephone, by *(name)*:

INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.

1. **Party or parties** *(answer one)*:
   a. ☐ This statement is submitted by party *(name)*:
   b. ☐ This statement is submitted **jointly** by parties *(names)*:

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. The complaint was filed on *(date)*:
   b. ☐ The cross-complaint, if any, was filed on *(date)*:

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐ All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
   b. ☐ The following parties named in the complaint or cross-complaint
      (1) ☐ have not been served *(specify names and explain why not)*:
      (2) ☐ have been served but have not appeared and have not been dismissed *(specify names)*:
      (3) ☐ have had a default entered against them *(specify names)*:
   c. ☐ The following additional parties may be added *(specify names, nature of involvement in case, and date by which they may be served)*:

4. **Description of case**
   a. Type of case in ☐ complaint ☐ cross-complaint *(Describe, including causes of action)*:

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [Rev. July 1, 2011]   **CASE MANAGEMENT STATEMENT**   Page 1 of 5
Cal. Rules of Court,
rules 3.720–3.730
www.courts.ca.gov

| PLAINTIFF/PETITIONER: | CASE NUMBER: | CM-110 |
|---|---|---|
| DEFENDANT/RESPONDENT: | | |

4. b.   Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

☐   *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5. **Jury or nonjury trial**
   The party or parties request   ☐ a jury trial   ☐ a nonjury trial.   *(If more than one party, provide the name of each party requesting a jury trial):*

6. **Trial date**
   a. ☐   The trial has been set for *(date):*
   b. ☐   No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

   c.   Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7. **Estimated length of trial**
   The party or parties estimate that the trial will take *(check one):*
   a. ☐   days *(specify number):*
   b. ☐   hours (short causes) *(specify):*

8. **Trial representation** *(to be answered for each party)*
   The party or parties will be represented at trial   ☐   by the attorney or party listed in the caption   ☐   by the following:
   a.   Attorney:
   b.   Firm:
   c.   Address:
   d.   Telephone number:
   e.   E-mail address:                                                  f.   Fax number:
   ☐   Additional representation is described in Attachment 8.         g.   Party represented:

9. **Preference**
   ☐   This case is entitled to preference *(specify code section):*

10. **Alternative dispute resolution (ADR)**

    a.   **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 for information about the processes available through the court and community programs in this case.

    (1) For parties represented by counsel: Counsel ☐ has ☐ has not   provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.

    (2) For self-represented parties: Party ☐ has ☐ has not  reviewed the ADR information package identified in rule 3.221.

    b.   **Referral to judicial arbitration or civil action mediation** (if available).

    (1) ☐   This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.

    (2) ☐   Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

    (3) ☐   This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*

| PLAINTIFF/PETITIONER: | CASE NUMBER: | CM-110 |
|---|---|---|
| DEFENDANT/RESPONDENT: | | |

10. c. Indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in *(check all that apply and provide the specified information):*

|  | The party or parties completing this form **are willing to** participate in the following ADR processes *(check all that apply):* | If the party or parties completing this form in the case **have agreed** to participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation):* |
|---|---|---|
| (1) Mediation | ☐ | ☐ Mediation session not yet scheduled<br>☐ Mediation session scheduled for *(date):*<br>☐ Agreed to complete mediation by *(date):*<br>☐ Mediation completed on *(date):* |
| (2) Settlement conference | ☐ | ☐ Settlement conference not yet scheduled<br>☐ Settlement conference scheduled for *(date):*<br>☐ Agreed to complete settlement conference by *(date):*<br>☐ Settlement conference completed on *(date):* |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled<br>☐ Neutral evaluation scheduled for *(date):*<br>☐ Agreed to complete neutral evaluation by *(date):*<br>☐ Neutral evaluation completed on *(date):* |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled<br>☐ Judicial arbitration scheduled for *(date):*<br>☐ Agreed to complete judicial arbitration by *(date):*<br>☐ Judicial arbitration completed on *(date):* |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled<br>☐ Private arbitration scheduled for *(date):*<br>☐ Agreed to complete private arbitration by *(date):*<br>☐ Private arbitration completed on *(date):* |
| (6) Other *(specify):* | ☐ | ☐ ADR session not yet scheduled<br>☐ ADR session scheduled for *(date):*<br>☐ Agreed to complete ADR session by *(date):*<br>☐ ADR completed on *(date):* |

**CASE MANAGEMENT STATEMENT**

| PLAINTIFF/PETITIONER: | CASE NUMBER: | CM-110 |
|---|---|---|
| DEFENDANT/RESPONDENT: | | |

**11. Insurance**

a. ☐ Insurance carrier, if any, for party filing this statement *(name):*

b. Reservation of rights: ☐ Yes ☐ No

c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*

**12. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.
☐ Bankruptcy ☐ Other *(specify):*

Status:

**13. Related cases, consolidation, and coordination**

a. ☐ There are companion, underlying, or related cases.

(1) Name of case:
(2) Name of court:
(3) Case number:
(4) Status:

☐ Additional cases are described in Attachment 13a.

b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party):*

**14. Bifurcation**

☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

**15. Other motions**

☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

**16. Discovery**

a. ☐ The party or parties have completed all discovery.

b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery):*

| Party | Description | Date |
|---|---|---|

c. ☐ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify):*

**CASE MANAGEMENT STATEMENT**

| PLAINTIFF/PETITIONER: | CASE NUMBER: | **CM-110** |
|---|---|---|
| DEFENDANT/RESPONDENT: | | |

**17. Economic litigation**

a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

**18. Other issues**

☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*

**19. Meet and confer**

a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*

b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

20. Total number of pages attached *(if any):* _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached.

# EXHIBIT 2

JAMES T. HANNINK (131747)
jhannink@sdlaw.com
ZACH P. DOSTART (255071)
zdostart@sdlaw.com
DOSTART HANNINK & COVENEY LLP
4180 La Jolla Village Drive, Suite 530
La Jolla, California 92037-1474
Tel:  858-623-4200
Fax: 858-623-4299

Attorneys for Plaintiff

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ALAMEDA

| | |
|---|---|
| APRIL SPRUELL,<br>individually and on behalf of all others<br>similarly situated,<br><br>           Plaintiff,<br><br>vs.<br><br>SNAP RTO LLC,<br>a Utah limited liability company;<br>and DOES 1-50, inclusive,<br><br>           Defendants. | CASE NO. RG20080681<br><br><u>CLASS ACTION</u><br><br>FIRST AMENDED COMPLAINT FOR:<br><br>1)  VIOLATION OF THE KARNETTE<br>     RENTAL-PURCHASE ACT<br>     [Cal. Civ. Code, § 1812.620 et seq.]<br><br>2)  VIOLATION OF CALIFORNIA<br>     CONSUMERS LEGAL REMEDIES ACT<br>     [Cal. Civ. Code, § 1750 et seq.]<br><br>3)  UNFAIR COMPETITION<br>     [Cal. Bus. & Prof. Code, § 17200 et seq.]<br><br>4)  VIOLATION OF THE ELECTRONIC<br>     FUND TRANSFER ACT<br>     [15 U.S.C. § 1693 *et seq.*] |

**INTRODUCTION**

1.     This class action complaint seeks to remedy the violation of California consumer protection statutes by defendant Snap RTO LLC ("Snap").

2.     Snap offers extended payment terms for consumer goods pursuant to rental-purchase agreements.  In particular, for consumers who desire to obtain merchandise but may not be able to pay the retail price up front, Snap offers to enter into a rental-purchase agreement pursuant to which the consumer can make payments over a period of time.  In coordination with retail merchants with whom Snap has established business relationships, Snap offers such rental-purchase arrangements at retail businesses that sell, among other things, automotive goods and services, household furniture, appliances, and electronics.

3.     To guard against potential abuses inherent in consumer rental-purchase agreements, California has enacted a comprehensive statutory framework that regulates all rental-purchase transactions, codified in the Karnette Rental-Purchase Act, Cal. Civ. Code, § 1812.620 et seq. (the "Karnette Act").  (Unless otherwise indicated, statutory citations in this Complaint are to the Civil Code.)  Therefore, for transactions that take place within California, Snap is required to comply with the Karnette Act.  As described below, with respect to rental-purchase agreements entered into in the State of California, Snap violates the Karnette Act by charging a Processing Fee and/or a Returned Payments or Nonsufficient Funds Fee ("NSF Fee").

**PARTIES**

4.     Plaintiff April Spruell ("Plaintiff") is an individual residing in Oakland, California.

5.     Plaintiff is informed and believes and thereon alleges that Snap RTO LLC is a Utah limited liability company that does business in the State of California, including in Alameda County.

6.     Plaintiff does not know the names of the defendants sued as DOES 1 through 50 but will amend this Complaint when that information becomes known.  Plaintiff alleges on information and belief that each of the DOE defendants is affiliated with the named defendant in some respect and is in some manner responsible for the wrongdoing alleged herein, either as a direct participant, or as the principal, agent, successor, alter ego, or co-conspirator of another defendant.  Plaintiff will refer herein to the named defendant and the DOE defendants collectively as "Defendants."

1

7.     Venue is proper in this Court because Plaintiff resides in Alameda County and the rental-purchase agreement between Snap and Plaintiff was entered into in Alameda County.

## BACKGROUND REGARDING RENTAL-PURCHASE TRANSACTIONS
## AND THE KARNETTE ACT

8.     In a traditional retail sale, title to personal property is conveyed from the merchant to the consumer when payment is made at the point of sale.  As an alternative to a traditional retail sale, California law allows merchants to rent or lease personal property to consumers.

9.     In a "rental-purchase agreement," the merchant (referred to as the "lessor," § 1812.622(c)) retains ownership of the personal property while the consumer takes possession and agrees to make periodic lease payments over time, usually on a weekly, bi-weekly, or monthly schedule.  The consumer can eventually acquire ownership of the personal property by making an agreed-upon number of lease payments.  These payments, in the aggregate, are referred to as the "total of payments."  (§ 1812.622(l).)

10.     Studies show that the customer base for the rent-to-own industry consists primarily of low-income and financially-distressed consumers, a disproportionate number of whom are ethnic minorities.[1]  Rental-purchase arrangements offer immediate access to merchandise for what *appears* to be a low periodic payment, but in fact, such transactions are very costly.  The Federal Trade Commission has cited studies showing that the total cost of purchasing through a rent-to-own transaction is usually two or three times the retail price of comparable goods.

11.     The Karnette Act defines the term "fee" to mean "any payment, charge, fee, cost, or expense, however denominated, other than a rental payment."  (§ 1812.622(g).)

---

[1] *See* Testimony of Margot Saunders, Before a Hearing of the U.S. House of Representatives Financial Services Committee, 26 July 2011, entitled "Examining Rental Purchase Agreements and the Potential Role for Federal Regulation" *available at* https://www.govinfo.gov/content/pkg/CHRG-112hhrg67944/html/CHRG-112hhrg67944.htm (last accessed September 7, 2021).  According to the Federal Trade Commission's Survey of Rent-to-Own Customers, published in April 2000, 59% of rent-to-own customers had a household income of less than $25,000, and 41% were members of a minority community.

FIRST AMENDED COMPLAINT                                                    Case No. RG20080681

12.     The Karnette Act prohibits a lessor from charging any fee that is not permitted by the Karnette Act.  (§ 1812.623(a)(7).)

13.     For any fee that *is* permitted by the Karnette Act, a lessor can charge such a fee only to the extent it is both "reasonable" and "actually incurred by the lessor."  (§ 1812.624(a)(7).)  The lessor has the burden of proof to establish that a fee was reasonable and that it was an actual cost incurred by the lessor.  (*Ibid*.)

## PLAINTIFF'S RENTAL-PURCHASE TRANSACTION

14.     On September 18, 2020, Plaintiff went to New Homeworld Outlet in San Leandro, California.  New Homeworld Outlet is a furniture retailer with whom Snap has an established business relationship.

15.     After considering available merchandise, Plaintiff expressed an interest in a bunk bed and mattress.  Following a conversation with the sales agent, Plaintiff agreed to complete the transaction through a rental-purchase agreement with Snap.  A true and correct copy of the rental-purchase agreement between Plaintiff and Snap, dated September 18, 2020, is attached hereto as Exhibit 1.

16.     As shown on page 1 of the rental-purchase agreement, Snap charged Plaintiff a "Processing Fee" in the amount of $39.00.  Plaintiff alleges that by charging the Processing Fee, Snap violated § 1812.624(a)(7) of the Karnette Act, as well as other provisions of California consumer-protection law.

17.     In addition to the Processing Fee, Snap's standard form of rental-purchase agreement also provides that the customer may be required to pay an NSF Fee in the amount of $20.00 if there are insufficient funds in the customer's account to cover a payment when due.  By providing for and charging the NSF Fee, Snap violated § 1812.624(a)(7) of the Karnette Act, as well as other provisions of California law.

## CLASS ACTION ALLEGATIONS

18.     Pursuant to Code of Civil Procedure § 382, Plaintiff seeks relief on behalf of the following Class:  "All individuals who, between November 12, 2016, and March 10, 2021, entered into a rental-purchase agreement with Snap RTO LLC in the State of California that included

3

provisions providing for payment of a Processing Fee and/or an NSF Fee.  Excluded from the Class are persons who have entered into an agreement with Snap that effects a release of claims that would otherwise be within the scope of this action."

19.     Ascertainability.  The members of the Class may be ascertained by reviewing records in the possession of Defendants and/or third parties, including without limitation Defendants' customer records and billing records.

20.     Common Questions of Fact or Law.  This lawsuit is suitable for class treatment because common questions of fact and law predominate over any individual issues.  Common questions include but are not limited to: (1) whether the Processing Fee and/or NSF Fee charged by Defendants are fees that are permitted by the Karnette Act; (2) if so, whether the Processing Fee and/or NSF Fee are reasonable; (3) if so, whether the Processing Fee and/or NSF Fee are an amount that is actually incurred by Snap; (4) whether Defendants' conduct constitutes an unlawful or unfair business act or practice; (5) Defendants' record-keeping practices; and (6) the appropriate remedies for Defendants' conduct.

21.     Numerosity.  The Class is so numerous that joinder of all Class members would be impracticable.  Plaintiff is informed and believes and thereon alleges that the Class consists of at least 100 members.

22.     Typicality and Adequacy.  The claims alleged by Plaintiff on behalf of the Class in this action are typical of the claims of all other Class members.  Plaintiff has no interests that are adverse to those of the other Class members.  Plaintiff will fairly and adequately protect the interests of the Class members.

23.     Superiority.  A class action is superior to other methods for resolving this controversy.  Because the amount of restitution, damages, or other monetary relief to which each Class member may be entitled is low in comparison to the expense and burden of individual litigation, it would be impracticable for Class members to redress the wrongs done to them without a class action forum.  Furthermore, on information and belief, Class members do not know that their rights have been violated.  Class certification would also conserve judicial resources and avoid the possibility of inconsistent judgments.

24. <u>Risk of Inconsistent or Varying Adjudications</u>.  Prosecuting separate actions for relief by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendants.  Moreover, as a practical matter, adjudication of relief with respect to individual Class members could be dispositive of the interests of others not parties to the individual adjudications or could substantially impair or impede their ability to protect their interests.

25. <u>Defendants Have Acted on Grounds Generally Applicable to the Class</u>.  Defendants have acted on grounds that are generally applicable to the members of the Class, thereby making appropriate final injunctive relief and/or declaratory relief with respect to the Class as a whole.

## FIRST CAUSE OF ACTION

(Violation of the Karnette Rental-Purchase Act)

26. Plaintiff incorporates by reference the preceding paragraphs.

27. Defendants violated the Karnette Act by including in rental-purchase agreements provisions that authorize the charging of a Processing Fee and an NSF Fee.  Such fees were not reasonable and/or not actually incurred by Defendants, in violation of § 1812.624(a)(7).

28. Plaintiff is informed and believes and thereon alleges that when Snap entered into rental-purchase agreements with Plaintiff and other California consumers during the applicable limitations period, Snap violated, and continues to violate, the Karnette Act in the same way as alleged above.  The unlawful charging of a Processing Fee and/or an NSF Fee affects many consumers throughout the State of California.

## SECOND CAUSE OF ACTION

(Violation of the Consumers Legal Remedies Act)

29. Plaintiff incorporates by reference the preceding paragraphs.

30. Plaintiff and Class members are "consumers" within the meaning of § 1761(d) in that they sought or acquired goods and/or services for personal, family, or household purposes.

31. The goods and/or services that are the subject of the rental-purchase agreements entered into by Plaintiff and Class members are "goods" and/or "services" within the meaning of § 1761(a) and (b).

5

32.     The rental-purchase agreements entered into by Plaintiff and Class members reflect "transactions" within the meaning of § 1761(e).

33.     Defendants have violated § 1770(a)(14) by representing that transactions reflected in the rental-purchase agreements entered into by Plaintiff and Class members involve rights or obligations that are prohibited by law.

34.     On December 3, 2020, Plaintiff's counsel sent a letter to Snap pursuant to Civil Code § 1782(a).  The letter provided notice to Snap of the CLRA violation alleged herein and demanded that within 30 days Snap take steps to cure its improper practices.  Snap did not comply with the CLRA letter within the statutory 30-day period.  Accordingly, Plaintiff has satisfied the statutory prerequisite to seek monetary damages for violation of the CLRA.

## THIRD CAUSE OF ACTION

(Unfair Competition)

35.     Plaintiff incorporates by reference the preceding paragraphs.

36.     By violating the Karnette Act as alleged above, and by violating the CLRA as alleged above, Defendants have engaged in a business practice that is unlawful, in violation of Bus. & Prof. Code § 17200 et seq.

37.     By violating the Karnette Act as alleged above, and by violating the CLRA as alleged above, Defendants have engaged in a business practice that is unfair, in violation of Bus. & Prof. Code § 17200 et seq.  Defendants' business practice of charging Processing Fees and/or NSF Fees as alleged herein has no social utility since it serves only to increase the profit accruing to Defendants without providing any corresponding benefit to consumers.  Plaintiff could not reasonably have avoided her injuries.  There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

38.     Plaintiff has lost money or property as a result of Defendants' conduct alleged herein.

## FOURTH CAUSE OF ACTION

(Violation of Electronic Fund Transfer Act)

39.     Plaintiff incorporates by reference paragraphs 4-17 as if set forth herein.

FIRST AMENDED COMPLAINT                                        Case No. RG20080681

40.     The Electronic Fund Transfer Act, 15 U.S.C. § 1693 *et seq.* ("EFTA"), establishes the rights, liabilities, and responsibilities of participants in an electronic fund transfer system. 15 U.S.C. § 1693 *et seq.* Defendants' transfer of money from Plaintiff's bank account constituted "electronic fund transfers" within the meaning of the EFTA and its implementing regulations, Regulation E, 12 C.F.R. § 205 *et seq.*

41.     Plaintiff is informed and believes and thereon alleges that Defendants initiated one or more transfers via a debit card and withdrew money from Plaintiff's bank account in violation of the EFTA.

## <u>PRAYER</u>

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

<u>On the First Cause of Action</u>:

1.     For a public injunction enjoining Defendants from charging Processing Fees and/or NSF Fees in violation of the Karnette Act with respect to rental-purchase agreements in California;

2.     For an award of attorney's fees and costs, pursuant to § 1812.636(a)(3);

3.     For a judicial declaration that the Processing Fees and/or NSF Fees charged by Defendants violate the Karnette Act, pursuant to § 1812.636(a)(5);

4.     For restitution and other equitable relief as the Court deems proper, pursuant to § 1812.636(a)(5);

<u>On the Second Cause of Action</u>:

5.     For a public injunction enjoining Defendants from representing that rental-purchase agreements involve the charging of Processing Fees and/or NSF Fees that are in violation of law, pursuant to § 1780(a)(2);

6.     For restitution, pursuant to § 1780(a)(3);

7.     For an award of attorneys' fees and costs, pursuant to § 1780(e);

<u>On the Third Cause of Action</u>:

8.     For a public injunction enjoining Defendants from charging Processing Fees and/or NSF Fees in violation of the Karnette Act, and from representing that rental-purchase agreements involve the charging of Processing Fees and/or NSF Fees that are in violation of law;

7

9.      For restitution;

On the Fourth Cause of Action:

10.     For actual damages and/or statutory damages pursuant to 15 U.S.C. § 1693m(a), for Plaintiff individually;

On All Causes of Action:

11.     For reasonable attorneys' fees;

12.     For costs of suit;

13.     For pre-judgment interest; and

14.     For such other relief that the Court deems just and proper.

Dated: September 9, 2021                    DOSTART HANNINK & COVENEY LLP


_____
ZACH P. DOSTART
Attorneys for Plaintiff

944011.3

FIRST AMENDED COMPLAINT                                      Case No. RG20080681

Exhibit 1

THIS IS A COPY
The authoritative page of this record is held at na2.docusign.net

# RENTAL-PURCHASE AGREEMENT

| Lease Company (Lessor): SNAP RTO LLC<br>P.O. Box 26561<br>Salt Lake City, UT 84126<br>Phone: (877) 557-3769 | Lessee: April Renee Spruell<br>REDACTED | |
|---|---|---|
| Application ID: | Lease Date: 09/18/2020<br>3:29 PM | Property Condition: New |
| Description of goods being purchased from the Retailer (the "Property") further explained in Exhibit A: | | |

**FORMATION OF AGREEMENT. New Homeworld Outlet Inc.**

**ACQUISITION OF PROPERTY AS AGENT; NEW CONDITION; DESCRIPTION.** You are obtaining the Property as our agent. We own the Property unless and until you make the payments necessary to acquire ownership. You agree to obtain from the Retailer only new goods for personal, family or household purposes.

## IMPORTANT RENTAL-PURCHASE DISCLOSURES – INCLUDING COST AND PAYMENT

NOTICE: YOU ARE RENTING THIS PROPERTY. YOU WILL NOT OWN IT UNTIL YOU MAKE ALL OF THE REGULARLY SCHEDULED PAYMENTS OR YOU USE THE EARLY PURCHASE OPTIONS. YOU DO NOT HAVE THE RIGHT TO KEEP THE PROPERTY IF YOU DO NOT MAKE REQUIRED PAYMENTS OR DO NOT USE THE EARLY PURCHASE OPTIONS. IF YOU MISS A PAYMENT, THE LESSOR CAN REPOSSESS THE PROPERTY, BUT, YOU MAY HAVE THE RIGHT TO THE RETURN OF THE SAME PROPERTY OR SIMILAR PROPERTY. SEE THE CONTRACT FOR AN EXPLANATION OF YOUR RIGHTS. YOU ARE NOT OBLIGATED TO PAY A SUM GREATER THAN THE LEASE CHARGE FOR A SINGLE LEASE TERM, PLUS ANY AMOUNTS FOR YOUR TERMINATION.

**Cash Price of Property.** The Cash Price of the Property is $ 0.00, which is the amount you would have paid if you had purchased the Property from the Retailer with cash on the day of this Agreement, inclusive of any applicable sales or use tax.

**Total Cost of Lease; Periodic Payments; Processing Fee; Initial Payment; Cost of Rental.** Unless you exercise your 100-Day Option or Early Buy-Out Option set forth below, the "Total Cost" of the Property under this Agreement will be $ 39.00. The Total Cost is based on an Initial Payment of $ 0.00 payable on the date of this Agreement (the "Required Initial Payment"), if any, a processing fee (which is not a payment towards the cost of your rental) of $ 39.00 (the "Processing Fee"), if any, 24 additional payments of $ 94.36 (as adjusted, a "Regular Payment") each, payable twice each month. The Total Cost also reflects any additional cash paid today, if any. Your total initial payment due today is $ 39.00, which is the sum of the Required Initial Payment, if any, Processing Fee, if any, and any additional cash paid today. If you do not remit any applicable Processing Fee or Initial Payment at the time of purchase, it is included in the Regular Payments set forth above. The Total Cost does not include late payment, nonsufficient funds, default, pickup, reinstatement, or other fees, if any, disclosed below. You should read this Agreement for an explanation of any applicable additional fees. The cost of your rental ("Cost of Rental") is the difference between the Total Cost and Cash Price, and will be $ 39.00.

**Expected Delivery Date; First Regular Payment.** The Required Initial Payment, if any, covers the rental period that begins on the date you receive the Property and ends on your first Regular Payment date. Your first Regular Payment date will be at least seven days after the later of 09/19/2020 (i) (the "Expected Delivery Date"), and (ii) the date on which the Property is provided or delivered to you.

**100-Day Option.** At any time during the first 100 from the Expected Delivery Date, the "100-Day Option" applies, and you may acquire ownership of the Property by paying us the amount by which (i) the sum of the 100 - Day Amount, the Processing Fee, if any, applicable sales or use taxes, and any unpaid fees we have charged, exceeds (ii) the amount of any Initial Payment and Regular Payments you have made. The 100 Day Amount is $ 1,006.41.

**Early Buy-Out Option.** After your 100-Day Cash Payoff Option expires, you may exercise an early purchase option ("Early Buy-Out Option"), which is an amount equal to (i) any past due payments and fees plus (ii) the Cash Price stated in this Agreement multiplied by a fraction that has as the numerator the number of periodic payments remaining under this Agreement and that has the denominator the total number of periodic payments. Within 10 days after you execute this Agreement, we will personally deliver or send by first-class mail to you a notice informing you of this right, including the amount you must pay to acquire ownership and the date by which payment must be made. The attached chart shows the amount required to exercise your Early Buy-Out Option after each renewal payment, assuming you make each periodic payment on time.

**No Security Deposit Required. No security deposit is required under this Agreement.**

**Lease Term, Subsequent Terms; Renewal.** Your initial lease term expires 60 days from the later of the Expected Delivery Date or the date on which the Property is provided or delivered to you. Until (i) you obtain ownership the

Exhibit 1
Page 1

THIS IS A COPY
No authoritative Page of this record is held at na2.docusign.net

Property as provided in this Agreement, (ii) you terminate this Agreement as permitted hereunder and surrender the Property in its original condition, less reasonable wear and tear, as of the end of a lease term, or (iii) we terminate this Agreement in a manner permitted hereunder, this Agreement will automatically and repeatedly renew for additional lease terms, each 60 days in length.

**Maintenance of the Property.** We will keep the Property in good working order and repair without charging any fee to you. We will utilize any manufacturer's or seller's applicable warranty. If the repair or replacement cannot be immediately effectuated, we will provide substitute Property of comparable quality and condition. You will not be charged or held liable for any rental fee for any period during which the Property that is subject to this Agreement is not in good working order. Nothing in this section applies to the repair of damage resulting from your intentional, willful, wanton, reckless or negligent conduct. If any manufacturer's or seller's warranty is in force when you acquire the Property, it shall be transferred to you if allowed by the terms of the warranty.

**Reinstatement Rights.** If you are in default and/or the Property is surrendered or repossessed, you may reinstate this Agreement without losing any rights or options by paying: (i) all past due charges; and (ii) if allowed by applicable law, the reasonable costs of pickup and redelivery. You may exercise your reinstatement right within 180 days of your default or surrender/repossession of the Property or such longer period provided to you under applicable law.

**Right to Terminate.** You may terminate your lease payment obligations under this Agreement without penalty by paying all Regular Payments, fees and charges that are due or past due and voluntarily surrendering or returning the Property in its original condition, less reasonable wear and tear at the expiration of any lease term.

**Late Fees.** We reserve the right to charge a late fee for past due payments, after allowing for any grace period, of the lesser of 5 percent of the payment or $5.00 dollars, except that a minimum total fee of $2.00 dollars may be required.

**Other Important Terms.** See the other parts of this Agreement for additional important information on termination procedures, purchase option rights, responsibilities for loss, damage or destruction of the Property, actual or implied warranties, taxes, other charges and penalties you may incur, and other important information. You acknowledge that we provided you with a completed copy of this Agreement. You acknowledge that we made the disclosures at or before the consummation of the Agreement.

**Forty-Eight Hour Review Available.  You have 48 hours to review this Agreement prior to signing.**

All other fees which may be charged, include fees for:

(1) Returned Payments or Nonsufficient Funds Fee: $ 20.00

(2) Reinstatement Fees: None (other than pickup and redelivery charges allowed by law)

| TOTAL OF PAYMENTS | COST OF RENTAL | CASH PRICE |
|---|---|---|
| $ 2,264.43 | $ 39.00 | $ 0.00 |
| You must pay this amount to own the property if you make all the regular payments. | Amount over cash price you will pay if you make all regular payments, plus the processing fee. | Property available at this price for cash from the merchant. See about your early purchase option rights. |
| You can buy the property for less under the early purchase options. | AMOUNT OF EACH PAYMENT | NUMBER OF PAYMENTS | RENTAL PERIOD |
| | $ 94.36 | | |
| | per twice each month | 24 | 12 |

By signing, you agree that you received a legible copy of this Agreement. You agree to the terms of this Agreement on all 6 pages, including the "Customer Authorization for Payments via ACH," the "Arbitration Clause and Waiver of Jury Trial," and the other terms below.

Customer Signature:

DocuSigned by:

*April Spruell*

749A4683D259408...

The Lease Company's authorized signature indicates the Lease Company has accepted the terms, conditions and obligations of the Agreement and that the Lease Company agrees to this Agreement.

Snap RTO LLC By: Matt Browning Title: COO

**TERMINATION.** You may terminate (end) this Agreement at the end of any lease term by satisfying the requirements of this paragraph. You must promptly return the Property to us in accordance with our directions and pay amounts accrued. We may terminate this Agreement at any time if you are in default of your payment or other obligations. You must return the Property to the place we designate. Upon termination, you agree to pay the following charges: Any unpaid Regular Payments, fees and charges, plus any official fees and taxes imposed in connection with termination, including, but not limited to any applicable fines, surcharges, and taxes. You must also pay any excessive wear and use fees as provided in

THIS IS A COPY
the authoritative copy of this record is held at na2.docusign.net

this Agreement, subject to limitations of applicable law.

**STANDARDS FOR WEAR AND USE.** You may be charged for excess wear and use when you return the Property to us. The following standards apply for determining unreasonable or excess wear and use: You will not paint or letter the Property or modify any identification number of the Property. You will not add, remove or modify any accessories, equipment or parts without our prior written permission. The Property will not: Have damage, mechanical or electrical malfunction as applicable; be torn, burned, stained or shredded; have any dents, mold, or damage from water, sand, or freezing; or have inoperable parts. You must return the Property with all of its original parts.

**PROPERTY LOSS, THEFT OR DAMAGE.** If the Property becomes lost, stolen, damaged or destroyed, you agree to pay us an amount equal to the lesser of: (i) the Property's fair market value, as of the time it is lost, stolen, damaged or destroyed (determined by reference to an industry value guide we select); or (ii) the remainder of the cash price.

**WARRANTIES.** We make no express warranty on the Property, and, unless prohibited by law, the following sentences apply. YOU ARE LEASING THE PROPERTY "AS IS". WE MAKE NO EXPRESS WARRANTIES ON THE PROPERTY. WE DISCLAIM ANY WARRANTIES IMPLIED BY LAW, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR ANY PARTICULAR PURPOSE.

**DEFAULT, REPOSSESSION, AND OTHER REMEDIES. You will be in default of this Agreement if:**

- You do not pay any payment or other amount under the Agreement as provided or when we make demand.

- You give us any false or misleading information.

- You lose possession of the Property by confiscation, forfeiture or other involuntary transfer regardless of whether the Property is the subject of judicial or administrative proceedings.

- You die and there is no surviving customer.

- The Property is lost, stolen or damaged beyond repair.

- You assign the Agreement or transfer the Property.

- Unless prohibited by law, you violate any Agreement term.

If this Agreement is in default, we may at our election, and subject to any waiting period imposed by law, take any actions permitted by law, including without limitation one of the following actions, none of which will cure your default:

-Until you purchase the Property as provided in this Agreement, or the Property is repossessed or surrendered, in each case as permitted under this Agreement, this Agreement shall continue to renew, and we may continue to charge you rent under the terms of this Agreement.

-We may take any action we believe to be necessary or advisable to protect our interest in the Property.

-We may peacefully repossess the Property wherever we may find it. We will give any repossession notices required by law. After repossession or surrender, we will hold the Property, subject to any right you may have under applicable law to cure the default or recover the Property.

-Sums we spend taking any permitted action will be added to the amount accrued, unless prohibited by law.


**TAXES.** You must immediately pay or reimburse us if we pay for you all government charges relating to the Property, including, but not limited to fees, taxes, fines and surcharges, whether assessed on you, us, or the Property. We may add the amount to what you owe us if you do not pay us when we make demand. If you do not pay such amounts when they are assessed (unless such results from our negligence), you must pay any penalties when due or reimburse us if we pay them. You must pay the charges in this paragraph even if such charges are not billed to us or to you until after the end of the Agreement term, as long as such charges are applicable to some part of the Agreement term. You will not have to pay our income taxes.

**TITLE.** We retain title to the Property for the term of the lease and until you acquire ownership.

**PAYMENTS.** We have scheduled debits from your checking account, as provided below:

| CONSUMER AUTHORIZATION FOR PAYMENTS VIA ACH (ACH DEBITS) |
|---|
| **ACH Debits for Payment(s) and Range of Debits.** You authorize us to debit funds from your bank account for the amount of the lease payments and all other amounts accrued as provided in this Agreement, in the following range of amounts $1.00 - $500.00. You authorize us to debit lesser amounts than your payment, based on your payment history. Our debits will be in such range, unless we notify you. |
| **ACH Debits for Returned Payment Fee. You authorize us to debit $ 20.00 for any returned payment fee.** |
| **Notice of Variation.** If a debit falls outside the specified range, we will email you notice of the amount and date on or after which we will debit such amount. You will get at least 10 calendar days' notice. |
| **Payment Dates.** You authorize debits on or after the dates for payment provided in the Agreement, unless you otherwise direct us in writing. We will debit on or after every payment provided in this Agreement; provided, however, that we reserve the right to debit on the banking day immediately preceding your regular payment date if the payment date falls on a non-banking day (i.e., a holiday or weekend day). |

Exhibit 1
Page 3

THIS IS A COPY

**Corrections.** You authorize us to debit and credit your account to correct errors.

**Effective Date.** The transaction's effective date is the Agreement Date provided above.

**Account and Routing.** You authorize the debits to this account: Number \*\*\*\*\*   Routing Number \*\*\*\*\*   .

**Change in Account Information:** You authorize us to debit any new account you give us information for. If any account is rejected we will debit any account we have on file.

**Stop Payments.** You may stop payment at least three banking days before a payment.

**Revocation, Cancellation, Termination.** This authorization applies until you revoke it. You must provide at least three days' notice to cancel. Call at (877) 557-3769 at least three days before the proposed effective date of the termination.

**Other Changes.** Notify us at least five business days before the next billing date if your account information changes.

**Acknowledgments.** You read this authorization in print, on a computer screen, or other visual display. You acknowledge and agree to the following: this ACH Debit Authorization is not an instrument governed by Article 3 of the Uniform Commercial Code. Print and retain a hard copy or electronic copy of this ACH Debit Authorization.

**NON-WAIVER. We do not waive our rights or remedies under this Agreement by failing to exercise them at any time.**

**COMMUNICATING WITH YOU; CALL RECORDING: (877) 557-3769**

**ENTIRE AGREEMENT, NO ADDITIONAL PROMISES, WRITTEN AND SIGNED CHANGES ONLY.** This Agreement, together with the other documents referred to herein, including but not limited to your purchase receipt and final payment amount and schedule, is our entire agreement. We have made no promises to you not contained in this Agreement or in such other documents. Any change to this Agreement must be written and signed by you and us.

**CUSTOMER MODIFIED PAYMENT DATES AND FREQUENCY.** The dates for, frequency of, number of and amount of Regular Payments in this Agreement are based upon the payday information you provided with your application. You may contact our customer service department or, if available use automated means, if available, to request a change of the scheduled dates for and frequency of Regular Payments. If we accept a change in the scheduled dates for or frequency of Regular Payments, the amount of each Regular Payment will automatically be modified so that that Total Cost, and the period over which the Total Cost is paid, will remain the same as prior to the requested change. Any refences in this Agreement to the number, frequency, timing and amount of Regular Payments refers to such number, frequency, time and amount as may be modified by Snap at your request.

**SEVERABILITY.** If a court or other dispute resolution body finds any part of this Agreement to be void or unenforceable, this Agreement is to be read as if that part were never a part of this Agreement. The rest of the Agreement will be enforceable.

**PROHIBITED ACTS.** You will keep the Property free from any liens or claims. You will not pawn or pledge the Property. You will not move the Property outside of the address you provided to us, and as updated, unless it is to return the Property to us, or our designee. To the extent use of the Property requires any minimum criteria for use, including for example a permit, license, or minimum age, you will not allow any improper use of the Property. As applicable, for any boat, motorized vehicle, or otherwise applicable, you will not permit any person, including yourself, to operate the Property while such person is impaired by drugs, alcohol or from any other cause. You will not use the Property for commercial purposes.

**WARNING: Unless you have acquired ownership of the Property, attempting to sell, pawn, or lien the Property violates state law.**

**ASSIGNMENT.** You may not assign this Agreement or transfer the Property without our prior written permission. We may assign all of our rights under this Agreement. Any person we assign it to may reassign it.

**ACCORD AND SATISFACTION.** Any statement accompanying your payment to the effect that your balance is paid in full will not bind us. Our deposit of any such payment will not constitute an accord and satisfaction, and we may apply the payment to your account.

**INSURANCE. We do not require you to purchase insurance from us and we have not provided any insurance to you.**

**RECEIPT.** Upon your request, we are required to provide you with a written receipt for each payment made.

**GOVERNING LAW.** The law of the state in which you reside when you signed this Agreement and applicable federal law will govern the Agreement and the interpretation of it, except that the Federal Arbitration Act expressly governs the Jury Trial Waiver and Arbitration Clause. You acknowledge that you reside at the address listed above on the Agreement Date.

**CONSUMER REPORT.** You have authorized us to obtain one or more consumer reports on you in connection with this transaction.

**CREDIT REPORTING.** We may report information to credit bureaus or other third-parties about your account, including late or missed payments, and any positive or negative account information may be reflected in your credit report.

**INDEMNIFICATION.** You agree to indemnify us and hold us and our assignees, agents, and insurers harmless from all damages, injuries, claims, demands, and expenses, including reasonable attorney's fees to the extent permitted by law, arising out of the condition, maintenance, use or operation of the Property, including a claim under the strict liability doctrine.

**NOTICES.** Notices may be given personally or sent by first class mail. Notice mailed to us must be sent to the address

THIS IS A COPY
https://na2.docusign.net/ ... record is held at na2.docusign.net

shown in this Agreement, or as we otherwise direct from time to time. Notices to us are deemed given when they are personally given or actually received at our address. Notices are deemed given to you when they are personally given or when placed in the mail, addressed to you at your address then shown on our records, even though you might not actually receive our mailed notice. You agree that 30 days' notice is reasonable, unless state law requires a longer period, in which case you agree that the state-required period is reasonable. You authorize us to send notices to your email address unless prohibited by law.

**JURY TRIAL WAIVER AND ARBITRATION CLAUSE.** By signing, you agree to this Jury Trial Waiver and Arbitration Clause ("Clause").

| Background and Scope | | |
|---|---|---|
| What is arbitration? | An alternative to court. | In arbitration, a third party ("Arbiter") solves Disputes in a hearing ("hearing"). You, related third parties, and we, waive the right to go to court. Such "parties" forgo jury trials. |
| Is it different from court and jury trials? | Yes. | The hearing is private and less formal than court. Arbiters may limit pre-hearing fact finding, called "discovery." The decision is final. Courts rarely overturn Arbiters. |
| Who does the Clause cover? | You, Us, and Others. | This Clause governs the parties, their heirs, successors, assigns, and third parties related to any Dispute. |
| Which Disputes are covered? | All Disputes. | In this Clause, the word "Disputes" has the broadest possible meaning. This Clause governs all "Disputes" involving the parties. This includes all claims even indirectly related to your application and agreements with us. This includes claims related to information you previously gave us. It includes all past agreements. It includes, as may be applicable, any additional periods, extensions, renewals, and plans. It includes claims related to damaged property, buyout, reinstatement, loss, damage, warranty, maintenance, collection, possession, privacy, and customer information. It includes claims related to setting aside this Clause. It includes claims about the Clause's validity and scope. It includes claims about whether to arbitrate. |
| Are you waiving rights? | Yes. | You waive your rights to:<br>1. Have juries solve Disputes.<br>2. Have courts, other than small-claims courts, solve Disputes.<br>3. Serve as a private attorney general or in a representative capacity.<br>4. Be in a class action. |
| Are you waiving class action rights? | Yes. | COURTS AND ARBITERS WON'T ALLOW CLASS ACTIONS. You waive your rights to be in a class action, as a representative and a member. Only individual arbitration, or small-claims courts, will solve Disputes. You waive your right to have representative claims. Unless reversed on appeal, if a court invalidates this waiver, then the agreement to arbitrate will be void, and Disputes will be resolved by a judge, but not a jury. |
| What law applies? | The Federal Arbitration Act ("FAA"). | This transaction involves interstate commerce. Thus, the FAA governs. If a court finds the FAA doesn't apply, and the finding can't be appealed, then the state law where you were when you signed, governs. The Arbiter must apply substantive law consistent with the FAA. The Arbiter must follow statutes of limitation and privilege claims. |
| Can the parties try to solve Disputes first? | Yes. | We can try to solve Disputes if you call us at **(877) 557-3769.** If this doesn't solve the Dispute, mail us written notice, within 100 days of the Dispute date. In your notice, tell us the details and how you want to solve it. We will try to solve the Dispute. If we make a written offer ("Settlement Offer"), you can reject it and arbitrate. If we don't solve the Dispute, either party may start arbitration. To start arbitration, contact an Arbiter or arbitration group listed. No party will disclose settlement proposals to the Arbiter during arbitration. |
| How should you contact us? | By mail. | Send mail to: Snap RTO LLC Attention: Arbitration. P.O. Box 26561, Salt Lake City, UT 84126. You can call us or use certified mail to confirm receipt. |
| Can small-claims court solve some Disputes? | Yes. | Each party has the right to arbitrate, or to go to small-claims court if the small-claims court has the power to hear the Dispute. Arbitration will solve all Disputes that the small-claims court does not have the power to hear. If there is an appeal from small-claims court, or if a Dispute changes so that the small-claims court loses the power to hear it, then the Dispute will only be heard by an Arbiter. |
| Do other options exist? | Yes. | Both parties may use lawful self-help remedies. This includes set-off or repossession and sale of the Property. Both parties may seek remedies which don't claim money damages. This includes pre-judgment seizure, injunctions, or equitable relief. |
| Will this Clause continue to govern? | Yes, unless otherwise agreed. | The Clause stays effective, unless the parties sign an agreement stating it doesn't. The Clause governs if you rescind the transaction. It governs if you default, renew, prepay, or pay. It governs if you terminate, if you reinstate, and if you return the Property. It governs if your Agreement is impacted by bankruptcy. The Clause remains effective, despite a transaction's termination, amendment, expiration, or performance. |

Process

| How does arbitration start? | Mailing a notice. | Either party may mail the other a request to arbitrate, even if a lawsuit has been filed. The notice should describe the Dispute and relief sought. The receiving party must mail a response within 20 days. If you mail the demand, you may choose the arbitration group. Or, your demand may state that you want the parties to choose a local Arbiter. If related third parties or we mail the demand, you must respond in 20 days. Your response must choose an arbitration group or propose a local Arbiter. If it doesn't, we may choose the group. |
|---|---|---|
| Who arbitrates? | AAA, JAMS, or an agreed Arbiter. | You may select the American Arbitration Association ("AAA") (1-800-778-7879) http://www.adr.org or JAMS |

REDACTED

THIS IS A COPY

| | | (1-800-352-5267) http://www.jamsadr.com. The parties may also agree in writing to a local attorney, retired judge, or Arbiter in good standing with an arbitration group. The Arbiter must arbitrate under AAA or JAMS consumer rules. You may get a copy of these rules from such group. Any rules that conflict with any of our agreements with you, don't apply. If these options aren't available, and the parties can't agree on another, a court may choose the group. The parties will then obtain an Arbiter under such group's rules. Such Arbiter must enforce your agreements with us, as they are written. |
|---|---|---|
| Will the hearing be held nearby? | Yes. | The Arbiter will order the hearing within 30 miles of your home or where the transaction occurred. |
| What about appeals? | Appeals are limited. | The Arbiter's decision will be final. A party may file the Arbiter's award with the proper court. Arbitration will solve appeals of a small-claims court judgement. A party may appeal under the FAA. If the amount in controversy exceeds $1,500.00, a party may appeal the Arbiter's finding. Such appeal will be to a 3-Arbiter panel from the same arbitration group. The appeal will be de novo, and solved by majority vote. |

## Arbitration Fees and Awards

| Will we advance Arbitration Fees? | Yes, but you may pay costs. | We advance your "Arbitration Fees" if you ask us to. This includes filing, administrative, hearing, and Arbiter's fees. You pay your attorney fees and other expenses. |
|---|---|---|
| Are damages and attorney fees possible? | Yes, if allowed. | The Arbiter may award the same damages as a court. Arbiters may award reasonable attorney fees, and expenses, if allowed by law. |
| Will you pay Arbitration Fees if you win? | No. | If the Arbiter awards you funds, you don't reimburse us the Arbitration Fees. |
| Will you ever pay Arbitration Fees? | Yes/No. | If the Arbiter doesn't award you funds, then you may repay the Arbitration Fees. The Arbiter will decide whether you'll pay. If you must pay Arbitration Fees, the amount won't exceed state court costs. |
| What happens if you win? | You could get more than the Arbiter awarded. | If an Arbiter's award to you exceeds our last Settlement Offer, we will pay 3 amounts. We will pay the greater of the award amount or $500.00 ("bonus payment"). We will pay your attorney twice the attorney fees conferred ("attorney premium"). If the Arbiter orders, we will pay reasonable expert witness costs and other costs you incurred ("cost premium"). If we never made a Settlement Offer, we will pay the bonus payment, attorney premium, and any cost premium. The Arbiter may order the process for payment. If a law allows you more, this Clause won't prevent such award. We won't seek attorney fees and expenses. |
| Can an award be explained? | Yes. | A party may request details from the Arbiter, within 14 days of the ruling. Upon such request, the Arbiter will explain the ruling in writing. |

## Other Options

| If you don't want to arbitrate, can you still get a transaction? | Yes. You can get our services and decide not to arbitrate. | Consider these choices: <br> 1. Informal Dispute Resolution. Contact us, and attempt to settle any Disputes. <br> 2. Small-claims Court. Seek to solve Disputes in small-claims court, within state law limits. <br> 3. Get a Lease Without the Clause. Write to us and ask for an Agreement without the Clause. <br> 4. Opt-Out of Arbitration. Sign and then timely opt-out. |
|---|---|---|
| Can you opt-out of the Clause? | Yes. Within 60 days. | Write us within 60 calendar days of signing your agreement to opt-out of the Clause for that agreement. List your name, address, account number and date. List that you "opt out." If you opt out, it will only apply to that agreement. |

THIS IS A COPY

the authoritative copy of this record is held at na2.docusign.net

## Snap RTO LLC

### Your Consumer Report and the Price You Pay for a Lease-Purchase Agreement.

| | |
|---|---|
| **What is a consumer report?** | A consumer report is a record of transactions that you have initiated with others and your performance with respect to those transactions. It can include information about whether you pay your bills on time, your bank account history and/or how much you owe to others. |
| **How did we use your consumer information?** | We used information from your consumer report(s) to set the terms of the lease-purchase we are offering you, such as the rental fees, and length of term.<br>The lease-purchase terms offered to you may be less favorable than the lease-purchase terms offered to consumers who have better transaction histories. |
| **What if there are mistakes in your consumer report?** | You have the right to dispute any inaccurate information in your consumer report(s).<br>If you believe there are mistakes on your consumer report(s), you may contact Data X, Clarity Services and/or CoreLogic, which is/are the consumer reporting agency(ies) from which we obtained your consumer report(s).<br>It is a good idea to check your consumer report to make sure the information it contains is accurate. |
| **How can you obtain a copy of your consumer report?** | Under Federal law, you have the right to obtain a copy of your consumer report(s) without charge for 60 days after you receive this notice. To obtain your free report, contact:<br><br>**Data X**<br>Consumer Reporting Division<br>325 E Warm Springs Road STE 202<br>Las Vegas, Nevada 89119<br>Phone: 800-295-4790<br>Fax: 702-853-6969<br>http://consumers.dataxltd.com<br><br>**Clarity Services, Inc.**<br>PO Box 5717<br>Clearwater, FL 33758<br>Phone:866-390-3118<br>Fax: 727-712-9040<br>http://clarityservices.com/support/<br><br>**CoreLogic**<br>Consumer Relations Department<br>P.O. Box 509124<br>San Diego, CA 92150<br>1-800-815-8664 |
| **How can you get more information about consumer reports?** | For more information about consumer reports and your rights under Federal law, visit the Consumer Financial Protection Bureau's website at www.consumerfinance.gov/learnmore. |

Print and retain a hard copy or electronic copy

THIS IS A COPY
the authoritative copy of this record is held at na2.docusign.net

## EARLY PAYMENT CHART

The chart below shows the amount required to exercise your early purchase option after each renewal payment, assuming you make each periodic payment on time.

| # | Renewal Payment | Total Purchase Price |
|---|---|---|
| 1 | $ 94.36 | $ 1,006.41 |
| 2 | $ 94.36 | $ 912.05 |
| 3 | $ 94.36 | $ 817.69 |
| 4 | $ 94.36 | $ 723.33 |
| 5 | $ 94.36 | $ 628.97 |
| 6 | $ 94.36 | $ 534.61 |
| 7 | $ 94.36 | $ 440.25 |
| 8 | $ 94.36 | $ 911.29 |
| 9 | $ 94.36 | $ 860.23 |
| 10 | $ 94.36 | $ 809.17 |
| 11 | $ 94.36 | $ 758.12 |
| 12 | $ 94.36 | $ 707.06 |
| 13 | $ 94.36 | $ 656.00 |
| 14 | $ 94.36 | $ 604.94 |
| 15 | $ 94.36 | $ 553.88 |
| 16 | $ 94.36 | $ 502.83 |
| 17 | $ 94.36 | $ 451.77 |
| 18 | $ 94.36 | $ 400.71 |
| 19 | $ 94.36 | $ 349.65 |
| 20 | $ 94.36 | $ 298.59 |
| 21 | $ 94.36 | $ 247.53 |
| 22 | $ 94.36 | $ 196.48 |
| 23 | $ 94.36 | $ 145.42 |
| 24 | $ 94.36 | $ 0.00 |

## **PROOF OF SERVICE**

### **Spruell v. Snap RTO LLC, Case No. RG20080681**

**STATE OF CALIFORNIA, COUNTY OF SAN DIEGO**

At the time of service, I was over 18 years of age and **not a party to this action**.  I am employed in the County of San Diego, State of California.  My business address is 4180 La Jolla Village Drive, Suite 530, La Jolla, CA 92037-1474.

On September 9, 2021, I served true copies of the following document described as

**FIRST AMENDED COMPLAINT**

on the interested parties in this action as follows:

Steven E. Swaney
seswaney@venable.com
VENABLE LLP
101 California Street, Suite 3800
San Francisco, CA 94111
Tel: (415) 653-3750
Fax: (415) 653-3755

*Counsel for Defendant*

**BY MAIL:**  I enclosed the document in a sealed envelope or package addressed to the persons at the addresses listed above and placed the envelope for collection and mailing, following our ordinary business practices.  I am readily familiar with  Dostart Hannink & Coveney LLP's practice for collecting and processing correspondence for mailing.  On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

**BY E-MAIL:**  I caused a copy of the document to be sent from e-mail address cklobucar@sdlaw.com to the persons at the e-mail addresses listed above.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

1    I declare under penalty of perjury under the laws of the State of California that the foregoing

2  is true and correct.  Executed on September 9, 2021, at San Diego, California.

3

4                                                          *Catherine Klobucar*
                                                     Catherine S. Klobucar
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 3

Dostart Hannick & Coveney LLP                    Snap RTO LLC
Attn:  Dostart, Zach P.
4180 La Jolla Village Drive
Suite 530
La Jolla, CA    92037-1474

---

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

---

| Spruell                                  | No. <u>RG20080681</u> |
| Plaintiff/Petitioner(s)                  | |
| VS.                                      | Order |
| Snap RTO LLC                             | Complaint Business Tort/Unfair Business Practice |
| Defendant/Respondent(s)                  | |
| (Abbreviated Title)                      | |

The Complex Determination Hearing was set for hearing on 01/19/2021 at 03:00 PM in Department 23 before the Honorable Brad Seligman.  The Tentative Ruling was published and has not been contested.

IT IS HEREBY ORDERED THAT:

The tentative ruling is affirmed as follows:  COMPLEX DETERMINATION

The Court designates this case as complex pursuant to Rule 3.400 et seq. of the California Rules of Court.  Counsel are advised to be familiar with the Alameda County Local Rules concerning complex litigation, including Rule 3.250 et seq. An order assigning the case to one of the three complex judges and an initial case management order will be issued.

COMPLEX CASE FEES

Pursuant to Government Code section 70616, any non-exempt party who has appeared in the action but has not paid the complex case fee is required to pay the fee within ten days of the filing of this order. The complex case fee is $1,000 for each plaintiff or group of plaintiffs appearing together and $1,000 PER PARTY for each defendant, intervenor, respondent or other adverse party, whether filing separately or jointly, up to a maximum of $18,000 for all adverse parties.  All payments must identify on whose behalf the fee is submitted. Please submit payment to the attention of the Complex Litigation Clerk located in the Civil Division at the Rene C. Davidson Courthouse, 1225 Fallon Street, Oakland, CA  94612.  Please make check(s) payable to the Clerk of the Superior Court.  Documents may continue to be filed as allowed under Local Rule 1.9.  Note that for those admitted pro hac vice, there is also an annual fee.  (Gov't Code section 70617.)

PROCEDURES

Calendar information, filings, and tentative rulings are available to the public at http://www.alameda.courts.ca.gov/domainweb/.   All counsel are expected to be familiar and to comply with pertinent provisions of the Code of Civil Procedure, the California Rules of Court, the Alameda County Superior Court Local Rules and the procedures outlined on the domain web page of the assigned department.

SERVICE OF THIS ORDER

---

Counsel for plaintiff(s) shall have a continuing obligation to serve a copy of this order on newly joined parties defendant not listed on the proof of service of this order and file proof of service. Each party defendant joining any third party cross-defendant shall have a continuing duty to serve a copy of this order on newly joined cross-defendants and to file proof of service.

Dated:  01/19/2021

facsimile

_____
Judge Brad Seligman

Superior Court of California, County of Alameda
Rene C. Davidson Alameda County Courthouse

Case Number: RG20080681
Order After Hearing Re: of 01/19/2021

## DECLARATION OF SERVICE BY MAIL

I certify that I am not a party to this cause and that a true and correct copy of the
foregoing document was mailed first class, postage prepaid, in a sealed envelope,
addressed as shown on the foregoing document or on the attached, and that the
mailing of the foregoing and execution of this certificate occurred at
1225 Fallon Street, Oakland, California.

Executed on 01/25/2021.

Chad Finke  Executive Officer / Clerk of the Superior Court

By _____

Deputy Clerk

SUPERIOR COURT OF CALIFORNIA
COUNTY OF ALAMEDA

Case Number: RG20080681
Case Name: Spruell v. Snap RTO LLC

RE: STIPULATION TO EXTEND DEADLINE FOR DEFENDANT SNAP RTO, LLC TO
RESPOND TO COMPLAINT

---

CLERK'S CERTIFICATE OF SERVICE

I certify that I am not a party to this cause and that a true and correct copy of the foregoing document
was mailed first class, postage prepaid, in a sealed envelope, and that the mailing of the foregoing and
execution of this certificate occurred at 1225 Fallon Street, Oakland, California.

Executed: 02/04/2021

*Jhalisa Castaneda*
Courtroom Clerk, Dept. 23

| | |
|---|---|
| James Hannink<br>Zach P. Dostart<br>DOSTART HANNICK & COVENEY LLP<br>4180 La Jolla Village Drive, Suite 530<br>La Jolla, CA 92037<br>jhannink@sdlaw.com<br>zdostart@sdlaw.com | *Attorneys for Plaintiff* |
| Steven e. Swaney<br>VENABLE LLP<br>101 California Street, Suite 3800<br>San Francisco, CA 94111<br>seswaney@venable.com | *Attorneys for Defendant* |

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF ALAMEDA

| | |
|---|---|
| APRIL SPRUELL, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>        v.<br><br>SNAP RTO, LLC.,<br><br>                    Defendant. | Case No. RG20080681<br><br>**CLASS ACTION**<br><br>[~~PROPOSED~~] ORDER<br><br>Complaint filed:  November 12, 2020 |

**[PROPOSED] ORDER EXTENDING DEADLINE TO RESPOND TO COMPLAINT**

Upon the Parties' stipulation, and for good cause shown, it is hereby

**ORDERED** that Snap RTO, LLC's response to the Complaint in this action shall be due on or before February 18, 2021.

**IT IS SO ORDERED.**

Dated: February 2, 2021

Hon. Winifred Y Smir

Judge of the Superior Court

STIPULATION TO EXTEND TIME TO ANSWER COMPLAINT

*14102741*

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF ALAMEDA

**FILED**
ALAMEDA COUNTY

FEB 1 7 2021

CLERK OF THE SUPERIOR COURT
By
Deputy

| | |
|---|---|
| APRIL SPRUELL, individually and on behalf of all others similarly situated, | Case No. RG20080681 |
| Plaintiff, | **CLASS ACTION** |
| v. | [~~PROPOSED~~] ORDER |
| SNAP RTO, LLC., | |
| Defendant. | Complaint filed:  November 12, 2020 |

**[~~PROPOSED~~] ORDER EXTENDING DEADLINE TO RESPOND TO COMPLAINT**

Upon the Parties' stipulation, and for good cause shown, it is hereby

**ORDERED** that Snap RTO, LLC's response to the Complaint in this action shall be due on or before March 18, 2021 and the Case Management Conference currently scheduled for February 23, 2021 is continued to _March 80_, 2021 at _3:00pm_

**IT IS SO ORDERED.**

Dated: _February 17_, 2021

Hon. Brad Seligman
Judge of the Superior Court

3

STIPULATION TO EXTEND TIME TO ANSWER COMPLAINT AND CONTINUE CMC
CASE NO. RG20080681

SUPERIOR COURT OF CALIFORNIA
COUNTY OF ALAMEDA

Case Number: RG20080681
Case Name: Spruell v. Snap RTO LLC

RE: THIRD STIPULATED REQUEST TO EXTEND DEADLINE FOR DEFENDANT
SNAP RTO, LLC TO RESPOND TO COMPLAINT

---

CLERK'S CERTIFICATE OF SERVICE

I certify that I am not a party to this cause and that a true and correct copy of the foregoing document was mailed first class, postage prepaid, in a sealed envelope, and that the mailing of the foregoing and execution of this certificate occurred at 1225 Fallon Street, Oakland, California.

Executed: 03/23/2021

*Jhalisa Castaneda*
Courtroom Clerk, Dept. 23

| | |
|---|---|
| James Hannink<br>Zach P. Dostart<br>DOSTART HANNICK & COVENEY LLP<br>4180 La Jolla Village Drive, Suite 530<br>La Jolla, CA 92037<br>jhannink@sdlaw.com<br>zdostart@sdlaw.com | *Attorneys for Plaintiff* |
| Steven e. Swaney<br>VENABLE LLP<br>101 California Street, Suite 3800<br>San Francisco, CA 94111<br>seswaney@venable.com | *Attorneys for Defendant* |

1

2

3

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF ALAMEDA

4

5

6

7

8

9

10

11

| | |
|---|---|
| APRIL SPRUELL, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>  v.<br><br>SNAP RTO, LLC.,<br><br>     Defendant. | Case No. RG20080681<br><br>**CLASS ACTION**<br><br>[~~PROPOSED~~] **ORDER**<br><br>Complaint filed:  November 12, 2020 |

12

13

14

15

16

17

18

19

20

21

**[~~PROPOSED~~] ORDER EXTENDING DEADLINE TO RESPOND TO COMPLAINT**

Upon the Parties' stipulation, and for good cause shown, it is hereby

**ORDERED** that Snap RTO, LLC's response to the Complaint in this action shall be due on or before April 2, 2021.

**IT IS SO ORDERED.**

Dated: ___3/2___ , 2021

_____

Hon. Seligman

Judge of the Superior Court

22

23

24

25

26

27

28

STIPULATION TO EXTEND TIME TO ANSWER COMPLAINT

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

| | |
|---|---|
| Spruell<br><div align="right">Plaintiff/Petitioner(s)</div><br><div align="center">VS.</div><br><br>Snap RTO LLC<br><div align="right">Defendant/Respondent(s)</div><div align="center">(Abbreviated Title)</div> | No. <u>RG20080681</u><br><br>Case Management Order<br><br>Date:  04/13/2021<br>Time:  03:00 PM<br>Dept:  23<br>Judge:  Brad Seligman |

ORDER re: CASE MANAGEMENT

The Court has ordered the following after review of the case, including timely filed Case Management Statements, without a conference.

FURTHER CONFERENCE

A further Case Management Conference is scheduled for 07/13/2021 at 03:00 PM in Dept. 23.

Counsel and self-represented litigants are reminded to check the court's register of action before appearing at any case management conference at least two days before any scheduled appearance to determine if the court has issued a tentative case management order.  If published, this tentative case management order will become the order of the Court unless counsel or self-represented party notifies the Court and opposing counsel/self-represented party by email no less than one court day prior to the CMC that s/he intends to appear in person at the CMC to discuss some aspect of the order, and specifies the nature of the party's concern. (Please note that the Tentative Rulings postings on the website is for tentative rulings on law and motion matters and will not display tentative Case Management Orders. The tentative Case Management Orders are found in the Register of Action). The court may be reached at Dept.23@alameda.courts.ca.gov.

Plaintiff and Defense Counsel shall file Updated Case Management Statements (preferably joint) in compliance with CRC § 3.725, preferably on pleading paper rather than on Judicial Council Form CM-110,  no later than five (5) court days prior to the CMC.  PARTIES ARE STRONGLY ENCOURAGED TO SERVE COURTESY COPIES ON THE COURT VIA EMAIL TO CLERK BECAUSE OF DELAYS IN SCANNING AS A RESULT OF BUDGET SHORTFALLS IN ALAMEDA COUNTY.

NOTICES

The Court orders counsel and/or self-represented parties to obtain a copy of this order from the court's website  http://www.alameda.courts.ca.gov/domainweb.

Any delay in the trial, caused by non-compliance with any order contained herein, shall be the subject of sanctions pursuant to CCP 177.5.

Dated:  04/13/2021

Judge Brad Seligman

SUPERIOR COURT OF CALIFORNIA
COUNTY OF ALAMEDA

Case Number: RG20080681
Case Name: Spruell v. Snap RTO LLC

RE: STIPULATED PROTECTIVE ORDER AND ORDER

---

CLERK'S CERTIFICATE OF SERVICE

I certify that I am not a party to this cause and that a true and correct copy of the foregoing document was mailed first class, postage prepaid, in a sealed envelope, and that the mailing of the foregoing and execution of this certificate occurred at 1225 Fallon Street, Oakland, California.

Executed: 5/24/2021

*Jhalisa Castaneda*
Courtroom Clerk, Dept. 23

| | |
|---|---|
| James Hannink<br>Zach P. Dostart<br>DOSTART HANNINK & COVENEY LLP<br>4180 La Jolla Village Drive, Suite 530<br>La Jolla, CA 92037<br>jhannink@sdlaw.com<br>zdostart@sdlaw.com | *Attorneys for Plaintiff* |
| Steven e. Swaney<br>VENABLE LLP<br>101 California Street, Suite 3800<br>San Francisco, CA 94111<br>seswaney@venable.com | *Attorneys for Defendant* |

1



24050124

1  JAMES T. HANNINK (131747)
   jhannink@sdlaw.com
2  ZACH P. DOSTART (255071)
   zdostart@sdlaw.com
3  DOSTART HANNINK & COVENEY LLP
   4180 La Jolla Village Drive, Suite 530
4  La Jolla, California 92037-1474
   Tel: 858-623-4200
5  Fax: 858-623-4299

6  Attorneys for Plaintiff

7  STEVEN E. SWANEY (221437)
   seswaney@venable.com
8  VENABLE LLP
   101 California Street, Suite 3800
9  San Francisco, CA 94111
   Tel: 415-653-3750
10 Fax: 415-653-3755

11 Attorneys for Defendant

12

13            SUPERIOR COURT OF THE STATE OF CALIFORNIA

14                     COUNTY OF ALAMEDA

15

16 APRIL SPRUELL, individually and on behalf     CASE NO. RG20080681
   of all others similarly situated,
17                                               ASSIGNED FOR ALL PURPOSES TO
                  Plaintiff,                     JUDGE BRAD SELIGMAN
18                                               DEPARTMENT 23
19 vs.
                                                 **STIPULATED PROTECTIVE ORDER
20 SNAP RTO LLC, a Utah limited liability        AND [PROPOSED] ORDER**
   company; and DOES 1-50, inclusive,
21                                               Action Filed:  November 12, 2020
                  Defendants.                    Trial Date:    None Set
22

23

24

25

26

27

28

─────────────────────────────────────────────────────────────
STIPULATED PROTECTED ORDER                          Case No. RG20080681

FILED
ALAMEDA COUNTY

MAY 21 2021

CLERK OF THE SUPERIOR COURT
By_____Deputy

MAY 14 2021

Plaintiff April Spruell and Defendant Snap RTO LLC (collectively, "the Parties") through their counsel, jointly submit this Stipulated Protective Order to govern the handling of information and materials produced in the course of discovery or filed with the Court in this action.

**(1) Purposes and Limitations**

Disclosure and discovery activity in this action ("Action") is likely to involve production of confidential, proprietary, or private information for which special protection is warranted from public disclosure and from use for any purpose other than this litigation.  The Parties therefore stipulate to and request entry of this Protective Order ("Order") by the Court.  The Parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords extends only to the limited information or items that are entitled under the applicable legal principles to treatment as confidential.

**(2) Definitions**

2.1.    <u>Party:</u>  A party to this Action, including its officers, directors, employees, consultants, retained experts, and counsel (and their respective support staffs).

2.2.    <u>Discovery Material:</u>  Documents, electronically stored information, and things, regardless of the medium or matter generated, stored, or maintained (including, among other things, testimony, transcripts, or tangible things) that are produced or generated in connection with disclosures or discovery in this matter.

2.3.    <u>Protected Material:</u>  Discovery Material that is designated as Confidential or as Highly Confidential — Attorneys Eyes Only.

2.4.    <u>Confidential Material:</u>  Information (regardless of how generated, stored, or maintained) or tangible things which the Designating Party determines, reasonably and in good faith, should not be disclosed to the public because it constitutes confidential, proprietary, private or otherwise sensitive information such as financial, sales, customer, or commercial information.

2.5.    <u>Highly Confidential — Attorneys Eyes Only Material:</u>  Confidential Material that is especially sensitive, whose disclosure to another Party or non-party would create a risk of serious harm that may not be avoided by less restrictive means.

2.6.    <u>Receiving Party:</u>  A Party that receives Discovery Material.

1

2.7.   Producing Party:  A person or entity (including non-Parties) that produces Discovery Material in this action.

2.8.   Designating Party:  A person or entity (including non-Parties) that designates Protected Material.  A Designating Party need not be the Producing Party of the Protected Material.

2.9.   Challenging Party:  A Receiving Party that challenges a Designating Party's confidentiality designation for specified Discovery Material.

2.10.   Counsel:  Attorneys who are retained by a person or entity to represent or advise that person or entity in connection with this Action.  For purposes of this Order, "Counsel" includes any support staff regularly employed by Counsel.  Spruell's Counsel is Dostart Hannink & Coveney LLP.  Defendant's Counsel is Venable LLP.

2.11.   Expert:  A person with specialized knowledge or experience in an area pertinent to this Action who has been retained by a Party or its Counsel to serve as an expert witness or as a consultant.  This includes professional jury or trial consultants.

2.12.   Vendors:  Persons or entities that provide alternative dispute resolution (ADR) services or litigation support products or services other than Expert services, and their employees and subcontractors.  By way of example, Vendors may include persons or entities that provide products or services relating to mediation, arbitration, handling of Discovery Material, preparation of exhibits or demonstrations, photocopying, stenography, videotaping, or storage.

2.13.   Disk:  A device or storage medium upon which Discovery Material is produced in a form readable by a computer.

**(3) Scope**

The protections conferred by this Order cover not only Protected Material (as defined above), but also any information copied or extracted therefrom, as well as all copies, excerpts, summaries, or compilations thereof, plus testimony, conversations, or presentations by Parties or Counsel to or in court or in other settings that might reveal Protected Material.

**(4) Duration**

Even after the termination of this litigation, the confidentiality obligations imposed by this

2

1  Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order

2  otherwise directs.

3      **(5) Designating Protected Material**

4      5.1.    <u>Exercise of Restraint and Care in Designating Material for Protection.</u>  Each

5  Designating Party must take care to limit any such designation to specific material that qualifies

6  under appropriate standards.  A Designating Party must take care to designate for protection only

7  those portions of material that qualify — so that other portions for which protection is not

8  warranted are not unjustifiably swept within the ambit of this Order.

9      If it comes to a Party's or non-party's attention that Discovery Material that it designated

10  for protection does not qualify for protection at all, or does not qualify for the level of protection

11  initially asserted, that Party or non-party must promptly correct its designation and notify all

12  Receiving Parties of the correction.

13      5.2.    <u>Manner and Timing of Designation.</u>  Except as otherwise provided in this Order, or

14  as otherwise stipulated or ordered, Discovery Material that qualifies for protection under this

15  Order must be clearly designated as Protected Material at the time the material is disclosed or

16  produced.  Designation in conformity with this Order requires:

17      5.2(a)  <u>Material produced in documentary form.</u>  The Producing Party may designate

18  documents as Protected Material by affixing a legend "Confidential" or "Highly Confidential — ,

19  Attorneys Eyes Only" on each page.  A Producing Party that makes original documents available

20  for inspection need not designate them for protection until after the inspecting Party has indicated

21  which material it wants copied and produced.  During the inspection and before the designation,

22  all of the material made available for inspection shall be deemed "Highly Confidential —

23  Attorneys Eyes Only.  After the inspecting Party has identified the documents it wants copied and

24  produced, the Producing Party must designate the material in compliance with this Order before

25  producing the material.

26      5.2(b)  <u>Material produced in electronic form.</u>  Discovery Material may be produced in

27  electronic form.  If it is impossible or impractical to affix a legend to each electronic file produced

28  without altering its contents or its metadata, a Producing Party may affix a legend to the outside of

3

1  the Disk on which the Discovery Material is produced. The designation indicated in the legend

2  applies to all Discovery Material on the Disk.

3       If a Disk is designated with a legend on the outside of the Disk, no Receiving Party may

4  copy or print any material from that Disk unless the Receiving Party affixes a legend to the

5  material that will be printed or copied. The Receiving Party has the obligation to ensure that the

6  legend affixed to the material: (1) reflects the designation applied to the Disk by the Designating

7  Party; (2) is affixed permanently to the material; and (3) is prominently visible to each person who

8  might view the material, regardless of the software, computer system, or other means used to view

9  the material. If the nature of the electronically stored information makes it impossible or

10 impractical for the Receiving Party to fulfill these obligations, it must confer with the Producing

11 Party and/or the Designating Party and attempt to reach agreement about how the material should

12 be marked. If agreement cannot be reached in good faith, any party may move for a court order

13 concerning the manner of affixing a legend to the individual material.

14      Nothing in this Order, or any Party's stipulation to have this Order entered by the Court,

15 shall be deemed to be an agreement by any Party to produce or to receive Discovery Material in

16 any particular form.

17      5.2(c)  Transcripts and Testimony.  If Protected Material is discussed in a proceeding such

18 as a deposition, hearing, or trial, a Designating Party may identify the Protected Material on the

19 record as designated under this Order. When it is impractical during the proceeding to identify

20 each portion of the proceeding that is entitled to protection, and when it appears that substantial

21 portions qualify for protection, a Designating Party may invoke on the record a right to have up to

22 20 days after receiving the transcript to designate the transcript (or portions thereof) as Protected

23 Material. The Designating Party must designate the individual portions of the transcript which are

24 Protected Material. If only certain pages (or portions of pages) qualify for protection, the

25 Designating Party must take care not to over-designate any material.

26      A transcript (or portions thereof) may be designated as Protected Material by providing

27 written notice to all Receiving Parties and to the person who prepared the transcript within 20

28 days. The person who prepared the transcript must affix appropriate legends to all subsequent

4

1  copies of the transcript (or portions thereof) to indicate the designations.  All Receiving Parties

2  who received a copy of the transcript before the designation must affix appropriate legends to their

3  copies to indicate the designations.

4      5.2(d)  Tangible Items and Other Material.  If Protected Material is produced in a tangible

5  item or some other form other than documents, electronically stored information, or testimony, the

6  Designating Party may affix an appropriate legend in a prominent place on the exterior of the

7  tangible item.

8      5.2(e)  If a Designating Party determines that Discovery Material was not correctly

9  designated at the time of production, it must promptly notify all Receiving Parties of the correct

10  designation.  If Discovery Materials are redesignated with a higher level of confidentiality than

11  when they were originally produced, all Receiving Parties who received a copy of the material

12  before the correction must affix appropriate legends to their copies to indicate the corrected

13  designations and take reasonable steps to retrieve all copies of the newly designated material from

14  persons who were previously given access to the material but who are no longer permitted to have

15  such access.

16      5.3.  Inadvertent Failures to Designate.  If timely corrected, an inadvertent failure to

17  designate qualified material as protected does not, standing alone, waive the Designating Party's

18  right to secure protection under this Order for such material.  If material is appropriately

19  designated after it was initially produced, each Receiving Party must make reasonable efforts to

20  assure that the Protected Material is treated in accordance with the provisions of this Order after

21  receiving notice of the correction, including reasonable efforts to retrieve all copies of the

22  Protected Material previously disseminated.

23      5.4.  Information in Designated Material Available From Other Sources.

24      5.4(a)  Publicly known at the time of production.  Discovery Material should not be

25  designated as Protected Material if the information it contains is known and generally available to

26  the public.  Discovery Material that contains a mixture of public and nonpublic information may

27  be designated as Protected Material, in which case the Designating Party must make reasonable

28  efforts not to designate those pages that contain solely information that is known and generally

STIPULATED PROTECTIVE ORDER                                    Case No. RG20080681

1   available to the public.

2       5.4(b)  Subsequent disclosure to the public.  Protected Material may become known and

3   generally available to the public through means other than acts or omissions by a Receiving Party.

4   If that occurs, such material will lose its protected status at the time it becomes known and

5   generally available to the public, and a Receiving Party may challenge the designation.

6       5.4(c)  Information acquired through other means.  Information contained in Protected

7   Material may be available to a Receiving Party through means other than discovery governed by

8   this Order, even if it is not known and generally available to the public.  If a Receiving Party

9   acquires such information through legal means, this Order will not prohibit the Receiving Party

10  from disclosing the information acquired through such other means.  This Order does not alter any

11  obligations or conditions imposed on the Receiving Party by the circumstances under which it

12  acquired such information, such as acquisition under a nondisclosure agreement.

13      **(6) Challenging Confidentiality Designations**

14      6.1.   Timing of Challenges.  Unless a prompt challenge to a Designating Party's

15  confidentiality designation is necessary to avoid foreseeable substantial unfairness, foreseeable

16  avoidable burdens, or a later-occurring foreseeable significant disruption or delay of the litigation,

17  a Challenging Party does not waive its right to challenge a confidentiality designation by electing

18  not to mount a challenge promptly after the original designation is disclosed.

19      6.2.   Meet and Confer.  A Challenging Party may make a challenge only in good faith

20  and after conferring in good faith with the Designating Party.  In conferring, the Challenging Party

21  must explain the basis for its belief that the confidentiality designation is not proper and must give

22  the Designating Party an opportunity to review the designated material, to consider the

23  circumstances, and, if no change in the designation is offered, to explain the basis for the chosen

24  designation.

25      6.3.   Judicial Intervention.  If an agreement is not reached after meeting and conferring,

26  the Challenging Party may file a notice with the court, stating that an impasse has been reached

27  concerning confidentiality designations under this Order.  If the Designating Party persists in its

28  designations, the Designating Party may file a motion within 10 days after the notice is filed,

providing a declaration that confidentiality designations are valid.  Such a motion may not assert a

basis for a confidentiality designation on any ground that was not substantively discussed in the

meet and confer process.  The motion must specifically identify the designated material for which

the Designating Party wishes to maintain the confidentiality designations and set forth the basis

for each designation.  The Designating Party will have the burden of persuasion in any challenge.

If such a motion is filed, until the court rules on the motion, all parties must continue to treat the

material in question with the level of protection for which it was designated.

**(7) Access To and Use of Protected Material**

      **7.1.**   <u>Basic Principles.</u>  A Receiving Party may use Protected Material in connection with

this Action only for prosecuting, defending, attempting to settle this Action, or in administering a

settlement of this Action.  Protected Material may not be used for any other purpose, although a

Party may use its own Confidential or Highly Confidential Information for whatever purpose it

chooses.  Protected Material may be disclosed only to the categories of persons and under the

conditions described in this Order.  Protected Material must be stored and maintained in a manner

designed to ensure that access to it is limited as required by this Order.  A Party using,

disseminating or distributing Confidential or Highly Confidential Information for any purpose

other than for use in connection with this Action shall be subject to sanctions (including, without

limitation, monetary, evidentiary or terminating sanctions, in the Court's discretion), as well as

being potentially subject to any disciplinary or other application legal proceedings.

      **7.2.**   <u>Disclosure of "Confidential" Material.</u>  Unless otherwise ordered by the court or

permitted in writing by the Designating Party, a Receiving Party may disclose any material

designated Confidential, as well as any information contained in that material, only to:

      7.2(a)  The Receiving Party's Counsel and employees of Counsel to whom it is reasonably

necessary to disclose the information for this litigation.

      7.2(b)  If a Party is a natural person, then the Party himself.  If the Party is not a natural

person, then the officers, directors, and employees of the Receiving Party to whom disclosure is

reasonably necessary for this Action and who have signed the Agreement To Be Bound By

Protective Order (Exhibit A).

7.2(c)  Experts (as defined in this Order) of the Receiving Party to whom disclosure is reasonably necessary for this Action and who have signed the Agreement To Be Bound By Protective Order (Exhibit A), after the procedure in § 7.4 is followed.

7.2(d)  The Court and the Court's personnel.

7.2(e)  Vendors who have signed the Agreement To Be Bound By Protective Order (Exhibit A) and to whom disclosure is reasonably necessary for this litigation.

7.2(f)  During their depositions, witnesses to whom disclosure is reasonably necessary and who have signed the Agreement To Be Bound By Protective Order (Exhibit A).  Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material may not be disclosed to anyone except as permitted under this Order.

7.3.  <u>Disclosure of "Highly Confidential — Attorneys Eyes Only" Material.</u>  Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated Highly Confidential — Attorneys Eyes Only to the persons listed in § 7.2, other than officers, directors, and employees of any Party, with the exception of in-house counsel, to whom a Receiving Party may disclose such information.

7.4  <u>Media.</u>  In particular, a Receiving Party may not disclose any material designated Confidential or Highly Confidential — Attorneys Eyes Only, or information contained in that material, to any form of media including, but not limited to, print, television or Internet.

**(8) Relation to Other Proceedings**

If a Receiving Party receives an instrument issued in connection with any other proceeding (such as a subpoena, request for production, or court order) that it believes in good faith may compel disclosure of any Protected Material, the Receiving Party must notify the Designating Party in writing (by fax or email, if possible) promptly after recognizing that the instrument may call for production of Protected Material.  A copy of the instrument in question must accompany this notification.

The Receiving Party must also notify in writing the party or Court that caused the instrument to issue in the other proceeding that some or all of the material covered by the instrument is subject to this Order.  A copy of this Order must accompany this notification.

8

1   The purpose of imposing these duties is to provide the affected parties an opportunity to

2  protect their interests.  Each Party will bear its own burden and expense of seeking such

3  protection.  Nothing in this Order should be construed as authorizing or encouraging a Receiving

4  Party in this action to challenge or disobey a lawful instrument in another proceeding.

5   **(9) Unauthorized Disclosure of Protected Material**

6   If a Receiving Party learns that Protected Material has been accessed or used by a person

7  or in a manner not authorized by this Order and is certain that such access was not attributable to

8  any act or omission by it, the Receiving Party must promptly notify the Designating Party of the

9  unauthorized access or use.  If a Receiving Party learns that Protected Material has been accessed

10  or used by a person or in a manner not authorized by this Order and such access or use may be due

11  to an act or omission by the Receiving Party, the Receiving Party must promptly do the following:

12  (a) notify the Designating Party of the unauthorized access or use, (b) use its best efforts to

13  retrieve all copies of the Protected Material that were inappropriately accessed or used, (c) provide

14  a copy of this Order to each person to whom unauthorized access or use was available, and (d)

15  request that each such person execute a copy of the Agreement To Be Bound By Protective Order

16  that is attached hereto as Exhibit A.

17   **(10) Filing Protected Material**

18   Without written permission from the Designating Party, Protected Material may not be

19  filed in the public record.  Any Protected Material that is filed must be filed under seal.  A Party

20  that seeks to file anything under seal must comply with applicable rules and orders concerning

21  filings under seal.

22   **(11) Final Disposition**

23   Unless otherwise ordered or agreed in writing by the Producing Party, within 30 days after

24  the final termination of this action (including appeals), each Receiving Party must return all

25  Protected Material to the Producing Party. The Receiving Party may, at its option, destroy some

26  or all of the Protected Material instead of returning it to the Producing Party. This includes an

27  obligation to return or destroy all copies, abstracts, compilations, summaries, or any other form of

28  reproducing or capturing any of the Protected Material. Whether the Protected Material is

<div align="center">9</div>

1   returned or destroyed, the Receiving Party must submit a written certification to the Producing

2   Party (and, if not the same person or entity, to the Designating Party) by the 30 day deadline that

3   identifies (by category, where appropriate) all Protected Material that was returned or destroyed

4   and that affirms that the Receiving Party has not retained any copies, abstracts, compilations,

5   summaries, or other forms of reproducing or capturing any of the Protected Material.

6   Notwithstanding this provision, Counsel, and parties not represented by Counsel in this Action,

7   may retain an archival copy of all pleadings, motion papers, transcripts, legal memoranda,

8   correspondence, or work product, even if such materials contain Protected Material.  Any such

9   archival copies that contain or constitute Protected Material remain subject to this Order.

10   **(12) Miscellaneous**

11   12.1.   <u>Right to Further Relief.</u>  Nothing in this Order abridges the right of any Party to

12   seek relief (including modification of this Order) from the Court in the future.

13   12.2.   <u>Right to Assert Other Objections.</u>  By stipulating to the entry of this Order, no Party

14   waives any right it otherwise would have to object on any ground to disclosing or producing any

15   information or item.  Similarly, no Party waives any right to object on any ground to the use of

16   any Discovery Material as evidence.

17   12.3.   <u>Inadvertent Production or Disclosure of Privileged Matter.</u>  Unless the Producing

18   Party states otherwise, in writing, any production or disclosure of material subject to any privilege,

19   immunity, or similar protection is deemed inadvertent and will not constitute a waiver of such

20   privilege, immunity, or similar protection.  Upon learning of such inadvertent production or

21   disclosure, the Producing Party may promptly notify the Receiving Party that such production or

22   disclosure was inadvertent and that the Producing Party claims a privilege, immunity, or similar

23   protection.  Upon receiving such notification, the Receiving Party must return the original and all

24   copies of such material to the Producing Party or must certify in writing to the Producing Party

25   that the original and all copies of such material have been destroyed.  If a Receiving Party believes

26   that any material produced or disclosed to it may be subject to any privilege, immunity, or similar

27   protection, it must stop reading and promptly notify the Producing Party and may not read or

28   otherwise view the unread portion of such material until the court orders otherwise or the

10

1   Producing Party gives permission.

2       12.4.   Non-Parties.   Any person or entity who is not a Party to this Action may invoke this

3   Order by written notice to all Parties and may designate Discovery Material as Protected Material

4   in accordance with the terms of this Order.

5                                   *   *   *   *   *

6               **IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.**

7

8   DATED: May 14, 2021                  DOSTART HANNINK & COVENEY LLP

9

10                                       _____
                                         ZACH P. DOSTART
11                                       Counsel for Plaintiff

12

13  DATED: May 14, 2021                  VENABLE LLP

14

15                                       _____
                                         STEVEN E. SWANEY
16                                       Counsel for Defendant

17

18

19

20

21

22

23

24

25

26

27

28

                                        11

1

<u>ORDER</u>

2        Pursuant to the parties' stipulation, and for good cause shown, the Court approves the

3   foregoing Protective Order submitted by the Parties, and its terms shall govern all information

4   disclosed and documents and data produced in this Action.

5        **IT IS SO ORDERED,** *subject to colloquium*

6

7   Date: 5/24/21

8                                                    Honorable Brad Seligman, Superior Court Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12

STIPULATED PROTECTIVE ORDER                                          Case No. RG20080681

1    **Exhibit A: Agreement To Be Bound By Protective Order**

2        I, _____, declare under penalty of perjury under the

3    laws of California that I have read and understand the Protective Order that was entered in the

4    California Superior Court for Alameda County in *April Spruell et al. v. Snap RTO  LLC*, Case No.

5    No. RG20080681.  I agree to comply with and to be bound by that Order, and I understand that

6    failure to comply could expose me to sanctions and punishment in the nature of contempt.  I agree

7    that I will not use or disclose matter that is protected under that Order, except in strict compliance

8    with that Order.  I further agree that I submit to the jurisdiction and venue of the above-referenced

9    court for proceedings relating to that Order, including enforcement or contempt proceedings, even

10   if such proceedings occur after the termination of the case in which the Order was entered.

11   Date: _____

12   Printed Name: _____

13   Signature: _____

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13

STIPULATED PROTECTIVE ORDER                                        Case No. RG20080681

Addendum:

If either Party seeks to file Confidential material or disclose the contents of Confidential material designated as such by the opposing Party as a basis for adjudication other than discovery motions or proceedings (e.g., motions within the scope of CRC 3.1350 and 3.764), the filing Party must meet and confer with the designating Party at least 10 calendar days prior to the intended filing date to offer the designating Party the opportunity to evaluate whether the designated materials fall within the parameters of CRC 2.550(d), and to either (a) remove the Confidential designation, or (b) prepare a motion or application pursuant to CRC 2.551(b).

---

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

---

| | |
|---|---|
| Spruell <br> <div align="right">Plaintiff/Petitioner(s)</div> <br> <div align="center">VS.</div> <br><br> Snap RTO LLC <br><br> <div align="right">Defendant/Respondent(s)</div> <div align="center">(Abbreviated Title)</div> | No. <u>RG20080681</u> <br><br> Case Management Order <br><br> Date: 07/13/2021 <br> Time: 03:00 PM <br> Dept: 23 <br> Judge: Brad Seligman |

ORDER re: CASE MANAGEMENT

The Court has ordered the following after review of the case, including timely filed Case Management Statements, without a conference.

FURTHER CONFERENCE

A further Case Management Conference is scheduled for 09/14/2021 at 03:00 PM in Dept. 23.

Plaintiff and Defense Counsel shall file Updated Case Management Statements (preferably joint) in compliance with CRC § 3.725, preferably on pleading paper rather than on Judicial Council Form CM-110, no later than five (5) court days prior to the CMC. PARTIES ARE STRONGLY ENCOURAGED TO SERVE COURTESY COPIES ON THE COURT VIA EMAIL TO CLERK BECAUSE OF DELAYS IN SCANNING AS A RESULT OF BUDGET SHORTFALLS IN ALAMEDA COUNTY.

NOTICES

The Court orders counsel and/or self-represented parties to obtain a copy of this order from the court's website  http://www.alameda.courts.ca.gov/domainweb.

Any delay in the trial, caused by non-compliance with any order contained herein, shall be the subject of sanctions pursuant to CCP 177.5.


Dated: 07/13/2021

                                                facsimile

                                        _____
                                                Judge Brad Seligman